**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| **RICK SCOTT** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMERICAN NATIONAL TRUST &** | § | **NO. 5:12-CV-00006-C** |
| **INVESTMENT COMPANY, LLC,** | § | |
| **AMERICAN NATIONAL TRUST &** | § | |
| **INVESTMENT MANAGEMENT** | § | |
| **COMPANY, LLC,** | § | |
| **PHYLLIS FRANCIS, JAMES McCOOL,** | § | |
| **SALVATORE CARPANZANO AKA** | § | |
| **JOHN SALVATORE CARPANZANO,** | § | |
| **AND JPMORGAN CHASE** | § | |
| **BANK, NATIONAL ASSOCIATION** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE SAM R. CUMMINGS, UNITED STATES DISTRICT JUDGE PRESIDING:

1.      NOW COMES Plaintiff Rick Scott, hereinafter referred to as "Scott," complaining of and against American National Trust & Investment Company, LLC, hereinafter referred to as "Trust," American National Trust & Investment Management Company, LLC, hereinafter referred to as "Trust Management," Phyllis Francis, hereinafter referred to as "Francis," James McCool, hereinafter referred to as "McCool," Salvatore Carpanzano AKA John Salvatore Carpanzano, hereinafter referred to as "Carpanzano," and JPMorgan Chase Bank, National Association, hereinafter referred to as "Chase," all of which are sometimes collectively referred to as "Defendants," and for a cause of action would respectfully show the Court the following:

**I.**

**PARTIES**

2.      Plaintiff Rick Scott, is a citizen of the State of Texas who resides in Lubbock, Texas.

3.      Defendant American National Trust & Investment Company, LLC ("Trust"), is a supposed limited liability company.   It may be served by serving its Executive Vice President, Phyllis Francis, at 922 Morrow Way, Ft. Wayne, IN 46808.

4.      Defendant American National Trust & Investment Management Company, LLC ("Trust Management"), is a Delaware limited liability company with its principal place of business in Indiana.   It can be served by serving its registered agent for service of process, Harvard Business Services, Inc., at 16192 Coastal Highway, Lewes, DE 19958.

4.      Defendant Phyllis Francis is a citizen of the State of Indiana, who may be served at her residence at 922 Morrow Way, Ft. Wayne, IN 46808.

5.      Defendant James McCool is a citizen of the State of Indiana who may be served with process at his residence at 59370 Bremen Highway, Mishawaka, IN 46544-6405.

6.      Defendant Salvatore Carpanzano is also known as John Salvatore Carpanzano.   He is a citizen of the State of New York, and has appeared herein through his Notice and Amended Notices of Removal.

7.      Defendant JPMorgan Chase Bank, National Association, is an Ohio chartered banking entity with its principle place of business in Ohio, and has appeared herein.

## III.

## JURISDICTION AND VENUE

8.      Federal question subject matter jurisdiction exists under 28 U.S.C. § 1331 because this action arises from international banking transactions pursuant to 12 U.S.C. § 632.   Diversity jurisdiction also exists under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is a civil action between citizens of different states.

9.     Venue is proper in this district and division under 28 U.S.C. § 1391 because this is the district and division in which a substantial part of the events or omissions giving rise to Scott's claim occurred.   Furthermore, the Escrow agreement upon which this suit is predicated contains a forum selection clause for this court.

## IV.

## <u>FACTS</u>

10.     On or about October 19, 2011, Scott entered into a document entitled "Escrow Agreement," a true and correct copy of which is attached hereto and made a part hereof for all purposed and marked as Exhibit "A."   At all pertinent times, Defendants Francis and McCool were supposed officers, directors and/or managers of Defendant Trust and/or Defendant Trust Management.   At all pertinent times, Defendant Carpanzano was supposed to be the representative of Treasures FZE, which is a Free Enterprise Zone Company located in Dubai, United Arab Emirates, but, in fact, he was in control of Defendant Trust and Defendant Trust Management, and was at all times acting in concert with Defendants Trust, Trust Management, McCool and Francis.

11.     Pursuant to the terms of the Escrow Agreement (Exhibit "A"), on or about October 21, 2011, Scott caused to be wire-transferred to Shirley Zhu, on behalf of her employer, Defendant Chase, the sum of $2,000,000.00 into an account of Defendant Chase bearing account number Account D 3031589686 which account is purportedly in the name of Defendant Trust and/or Trust Management.   The $2,000,000 is designated as "Escrow Funds One" under the terms of Exhibit "A".   Escrow Funds One were to be held by Defendants Trust and Trust Management in an escrow/trust type account, pending the receipt by Defendant Trust and Trust Management and or Barclays Capital Holdings, LLC of a medium term note in the amount of $100,000,000.00, a

Bank Guarantee in the amount of $20,000,000.00 and $500,000,000 through a SWIFT MT 103 (the "Instruments").

12.     Pursuant to the terms of Exhibit "A", and under Section 3(a)(ii), Scott had the sole and absolute authority to recall or withdraw the $2,000,000.00 Escrow Funds One from the Escrow Account in full and without protest by any other party to the Escrow Agreement within 11 banking days should the Bank Guarantee either not be approved by Scott, or if it was not timely delivered to Defendant Trust and Trust Management.   Additionally, under Section 9 of the Escrow Agreement (Exhibit "A"), in the event Defendants Trust and Trust Management did not receive confirmation of an instrument and verify the delivery thereof to the Plaintiff on or before November 28, 2011, then Defendants Trust and Trust Management were bound to return all escrow funds to Scott.

13.     On or about October 31, 2011, an Amendment to the Escrow Agreement was executed by and between various parties to this litigation.   A true and correct copy of the October 31, 2011 Amendment to the Escrow Agreement is attached hereto and made a part hereof for all purposes and marked as Exhibit "B".   The effect of the entry of the Amendment to the Escrow Agreement (Exhibit "B") was to allow the Bank Guarantee as specified in Exhibit "A" to be issued in the name of Products by Big 12, Inc., a Texas corporation, which is a corporation wholly owned by the Plaintiff herein.

14.     On November 7, 2011, a Second Amendment to the Escrow Agreement was executed by some of the parties hereto.   A true and correct copy of the Second Amendment to the Escrow Agreement is attached hereto and made a part hereof for all purposes and marked as Exhibit "C". The effect of the entry into Exhibit "C" provided that the Plaintiff had the sole and absolute authority to recall or withdraw the $2,000,000.00 Escrow Funds One in full and without protest

after 11 banking days from the date of November 7, 2011.

15.      Neither of the Instruments as hereinabove referenced was ever delivered to Defendants Trust or Trust Management.

16.      On December 14, 2011, a date more than 11 banking days after November 7, 2011, and after the Escrow Agreement had expired by its own terms, Defendants Trust and Trust Management were notified that Scott was terminating the Escrow Agreement and requested that Escrow Funds One be returned in full to him.   On December 15, 2011, formal demand was made that the $2,000,000.00 Escrow Funds One be returned in full by close of banking on Friday, December 16, 2011.   Despite these demands, no return of the Escrow Funds One has been made by Defendants Trust and Trust Management to Scott.

17.      Prior to the entry of Exhibit "A", the Escrow Agreement, Scott was requested to come to New York City to be introduced to his "private banker."   Scott traveled to New York, and at that time was introduced to Ms. Zhu, Defendant Chase's employee.   During the meeting, Scott overheard some comments with Ms. Zhu, wherein she was told that this transaction would be "exactly like the last transaction."   Upon information and belief, Scott alleges that Ms. Zhu was conspiring with Defendants Trust, Trust Management, Francis, McCool, and Carpanzano to commit a fraud upon Scott and to deprive Scott of his interest in all funds deposited into escrow including Escrow Funds One.

18.      Ms. Zhu apparently is the employee of Defendant Chase who would have verified information about Defendants Trust and Trust Management in opening its escrow and/or trust account into which Scott wire transferred Escrow Funds One.   Upon information and belief, Scott alleges that Ms. Zhu failed to require Defendants Trust and Trust Management to comply with Defendant Chase's policy of knowing your customer and as a result further perpetrated the

fraud upon Scott, which will be hereinafter described.

19.    At all times pertinent hereto, Ms. Zhu was an employee and/or officer of and represented Defendant Chase in this transaction.

## IV.

## CAUSES OF ACTION

20.    Scott shows the Court that Defendants Trust and Trust Management are responsible to return Escrow Funds One in full to Scott. That despite demand therefor, Defendants Trust and Trust Management have failed and refused to return Escrow Funds One, thereby breaching their contractual agreement with Scott and causing Scott damages in excess of the minimum jurisdictional requirements of this Court.

21.    Scott would further show that in accordance with Section 4 of the Escrow Agreement, until Defendants Trust and/or Trust Management and Barclays Capital Holdings, LLC confirmed the receipt of $500,000,000 through a SWIFT MT 103, Escrow Fund One cannot be removed, title, control and ownership of Escrow Funds One cannot be transferred and Escrow Funds One cannot be encumbered.

22.    Upon information and belief, Scott alleges that there have been transfers made by Defendants Trust and Trust Management of monies from Escrow Funds One in violation of the terms of the Escrow Agreement.    Scott would show this Court that Defendants Trust and Trust Management owed to him a fiduciary duty, which includes the duty of loyalty, a duty to make full disclosure, and a duty to exercise a high degree of care to conserve the trust fund and to pay it only to the people entitled to receive it under the terms of the Escrow Agreement. Distribution by Defendant Trust and Trust Management in violation of the terms of the Escrow Agreement, violated Defendants Trust and Trust Management's obligations and duties to act with

the utmost good faith toward Scott and to avoid loss of the escrow funds.    Any transfer from the escrow account regarding Escrow Funds One would have amounted to negligence on the part of the Escrow Agent.    Scott would show that the Escrow Agent owed to him a duty, that any transfer of Escrow Funds One in violation of the Escrow Agreement would have been a breach of that duty, and Scott has been damaged in the amount of the funds transferred, which is an amount in excess of the minimum jurisdictional requirements of this Court.

23.     Further, any transfer of funds from Escrow Funds One in violation of the terms of the Escrow Agreement would amount to a violation of the fiduciary duties owed to Scott by Defendants Trust and Trust Management.    Scott would show that Defendants Francis, McCool, and Carpanzano were willing participants in the breach of fiduciary duty, and as such, Scott seeks damages from each of them, in the amount of any monies which have been transferred from the Escrow Account.

24.     In the alternative, and without waiving the foregoing, upon information and belief, Scott alleges that there have been transfers made by Defendants Trust and Trust Management of monies from Escrow Funds One in violation of the fiduciary duties of Defendants Trust and Trust Management.    Scott alleges that the trust and/or escrow account established was but a mere sham, and that Defendant Trust is not a properly formed or existing trust company, and does not have requisite legal authority to act as such, nor to act as an escrow agent under the terms of Exhibit "A".    Further, that Defendant Carpanzano has absolute control over Defendants Trust and Trust Management, including the Defendant Francis and Defendant McCool.    This control includes the ability to make distributions of Escrow Funds One.    To the extent that there have been distributions to any of the Defendants, Scott hereby sues for recovery of those monies. Scott would show that any such transfers are recoverable pursuant to Section 24.001 et seq. of

the Texas Business and Commerce Code, and in particular, the Texas Fraudulent Transfer Act, that such transfers would have been fraudulent and with the intent to deprive Scott of his beneficial and outright ownership of Escrow Funds One.

25.     In the alternative, and without waiving the foregoing, Scott alleges that at the time of Exhibit "A", that neither Defendants Trust, Trust Management,  Francis, McCool and/or Carpanzano had any intent of honoring the terms and conditions of the agreement.   That the representations and statements as set forth in Exhibits "A", "B" and "C" were never intended to be fulfilled, and, in fact, such representations and statements were false.   The statements insofar as the holding of escrow funds, the return thereof, and the bringing of the Instruments under the terms of Exhibit "A", were intended to be relied upon by Scott and were, in fact, relied upon by Scott in his establishing Escrow Funds One.   The Defendants Trust, Francis, McCool and Carpanzano knew that the statements were false when they were made or made them recklessly without knowledge of the trust and made them as positive assertions.   The statements were made with the intent of inducing Scott to enter into the transaction.   Relying upon these named Defendants' statements, Scott entered into the transaction and would not have entered into the transaction but for these named Defendants' statements.

26.     Upon information and belief, Scott alleges that Ms. Zhu was involved with and assisted Defendants Trust, Francis, McCool and Carpanzano in the perpetration of fraud upon Scott. Scott was entitled to rely upon the statements made and did, in fact, rely upon the statements made, and as a result has been damaged.   Ms. Zhu's involvement was at all times while she was acting within the course and scope of her employment and in her capacity at Defendant Chase.

27.     Upon information and belief, the fraud of Ms. Zhu, while acting in the course and scope of her employment by Defendant Chase, is binding upon Defendant Chase and for which

Defendant Chase is liable.   Scott hereby sues the Defendants for all losses as a result of the fraud perpetrated upon him, in an amount in excess of the minimum jurisdictional requirements of this Court.

28.     In the alternative, and without waiving the foregoing, Scott would show that he qualifies as a consumer under Texas law, that various representations concerning escrow services that would be provided by Defendants Trust and Trust Management were made, that Defendants Trust and Trust Management failed to adhere to these representations, and thus they were misrepresentations, and that the misrepresentations are and were a producing cause of Scott's damages.   Defendants Trust and Trust Management and their officers and those in direction of it, being Defendants Francis, McCool and Carpanzano, are responsible for the misdeeds of Defendants Trust and Trust Management, and the actions on the part of Defendants Trust and Trust Management are a producing cause of Scott's damages.   Defendants Trust, Trust Management, Francis, McCool and Carpanzano engaged in unconscionable acts and/or courses of conduct that were producing causes of Scott's damages.    Scott hereby sues Defendants Trust, Trust Management, Francis, McCool and Carpanzano under § 17.41 et seq. of the Texas Business and Commerce Code and what is commonly known as the Deceptive Trade Practices - Consumer Protection Act.   Scott hereby sues these named Defendants for all damages allowed under said act, including treble damages, attorney's fees and costs, all of which are in excess of the minimum jurisdictional requirements of this Court.

29.     In the alternative, and without waiving the foregoing, Scott would show the Court that for various of the causes of action as alleged hereinabove, that Texas law provides for the recovery of exemplary damages.   Scott hereby sues each of the Defendants named herein for exemplary damages in an amount sufficient to punish the individual Defendant for their actions herein and

to serve as a deterrent to others similarly situated.

30.      In the alternative, and without waiving the foregoing, Scott would show that under various of the causes of actions as pled herein, Scott is entitled to recover a reasonable attorney's fee.   Scott Plaintiff hereby sues each of the Defendants herein, where applicable, for a reasonable attorney's fee.

## V.

## REQUEST FOR RESTRAINIGN ORDER AND INJUNCTIVE RELIEF

31.      Scott requires injunctive relief to prevent the Defendants Trust, Trust Management, Francis, McCool, and Carpanzano from disposing of any of the Escrow Funds One which they may have received and/or to prevent these Defendants from violating or continuing to violate, or assisting in the violation of Defendants Trust and Trust Management's contractual obligations, including Defendant Trust and Trust Management's obligations to leave intact Escrow Funds One and to return Escrow Funds One to Scott.   Scott requires injunctive relief against Defendant Chase to prevent Defendant Chase from allowing any person or entity to move, transfer, withdraw or any other type of expenditure or release of any funds which were previously wire transferred to it by Scott on October 21, 2011.   Specifically, Scott on October 21, 2011, under IMAD20111021GMQFMP01003536 wire transferred $2,000,000.00 to Defendant Chase for or on behalf of Defendants Trust and Trust Management, which was to comprise Escrow Funds One.   The escrow funds were initially placed into Defendant Trust and Trust Management 's Account D 3031589686 through Ms. Zhu.   Since that time, Scott is unaware whether all funds still remain in this account or have been transferred by Defendants Trust, Trust Management, Francis, McCool, and/or Carpanzano into any other account.

32.     Scott has alleged a cause of action against the Defendants as is indicated in this pleading and in the Affidavit of Rick Scott, which is attached hereto and made a part hereof for all purposes and marked as Exhibit "D".   Scott has shown a probably right of recovery and likelihood of success on the merits.   In the event that an immediate temporary restraining order is not issued, Scott will suffer imminent, irreparable harm in that his funds comprising Escrow Funds One will dissipate and may not ever be recovered.   Scott has no adequate remedy at law which prohibits the Defendants from transferring, alienating, or spending monies which did or have comprised Escrow Funds One.

33.     As a direct and proximate result of the Defendants' wrongful actions as alleged in this pleading, Scott has suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of a temporary restraining order and injunctive relief.   Scott is willing to post the necessary and reasonable bond to facilitate the injunctive relief requested.

34.     Scott is entitled to injunctive relief under statutory grounds pursuant to § 24.001 et seq. of the Texas Business and Commerce Code regarding fraudulent transfers and/or fraud. Specifically, any transfer under the current alleged factual situation, under the terms of Exhibits "A", "B" and "C" by either Defendants Trust, Trust Management, Francis, McCool, Carpanzano, or Chase would be fraudulent as to Scott and would be considered to have been made with the actual intent to harm or defraud Scott who qualifies as a creditor.   Pursuant to § 24.008 of the Texas Business and Commerce Code, Scott is entitled to injunctive relief against the disposition of the assets comprising Escrow Funds One or any disposition of monies which have been derived from Escrow Funds One.   Scott is also entitled to a temporary restraining order and injunctive relief under Fed.R.Civ.P. 65.

35.     Further, Scott would show that under the allegations of this pleading and of the Affidavit which is attached, Scott is entitled to equitable relief to prevent the furthering of a perpetrated fraud.

36.     The only adequate, effective and complete relief to Scott is to restrain the Defendants from further engaging in certain prescribed activities as set forth below.    Pursuant to Fed.R.Civ.P. 65, and in order to preserve the status quo during the pendency of this action, Scott seeks a temporary restraining order, and upon hearing, a temporary injunction until the time of final trial on the merits, an injunction ordering and immediately restraining the Defendants Trust, Trust Management, Francis, McCool, Carpanzano, and Chase, including any of their agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively the "Restrained Parties") as follows:

  a. moving, transferring, withdrawing, authorizing any type of expenditure, or release of any funds wire-transferred by Lone Star State Bank of West Texas on behalf of the Plaintiff,     Rick     Scott,     under     outgoing     wire     transfer IMAD:20111021GMQFMP01003536 on October 21, 2011, to Defendant JP Morgan Chase Bank National Association and into Account D 3031589686 at JP Morgan Chase Bank National Association;

  b. moving, transferring, withdrawing, authorizing any type of expenditure, or release of any funds which remain on deposit with JP Morgan Chase Bank, National Association, which may be traced back to any funds wire-transferred by Lone Star State Bank of West Texas on behalf of the Plaintiff, Rick Scott, under outgoing wire transfer IMAD:20111021GMQFMP01003536 on October 21, 2011, to Defendant JP Morgan Chase Bank National Association and into Account D 3031589686 at JP Morgan Chase Bank National Association;

  c. making any expenditures of or transferring, moving, withdrawing, or releasing any funds which any of the Defendants may have received which came from or initially comprised a part of funds wire-transferred by Lone Star State Bank of West Texas on behalf of the Plaintiff, Rick Scott, under outgoing wire transfer IMAD:20111021GMQFMP01003536 on October 21, 2011, to Defendant JP Morgan Chase Bank National Association and into Account D 3031589686 at JP Morgan Chase Bank National Association; and

d.  destroying or deleting any documents, evidence, or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiff, Rick Scott, including but not limited to, all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information.

WHEREFORE, PREMISES CONSIDERED, Scott prays that each of the Defendants be cited to appear and answer herein; that the Court enter a temporary restraining order; that the Court issue the same after Scott has posted bond as set by the Court; that upon hearing, the temporary restraining order be made into a temporary injunction pending the determination and conclusion of this case; that Scott have and recover of and from each Defendant, jointly and severally, the damages as alleged herein, including exemplary damages, attorney's fees, prejudgment interest at the highest rate allowed by law; and post judgment interest; costs of court; and such other and further relief to which Scott may show himself justly entitled, whether at law or in equity.

Respectfully submitted,

By:____/s/ Jim Hund_____
      Jim Hund; SBN: 10277800
      jhund@hkwwlaw.com
HUND, KRIER, WILKERSON & WRIGHT, P.C.
P.O. Box 54390
Lubbock TX 79453-4390
(806) 783-8700
(806) 783-8710 Telecopier

By:____/s/ Fernando M. Bustos_____
      Fernando M. Bustos; SBN:   24001819
      Email: fbustos@bustoslawfirm.com
LAW OFFICES OF FERNANDO M. BUSTOS, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
(806) 780-3800 FAX

ATTORNEYS FOR PLAINTIFF RICK SCOTT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing pleading was served upon all counsel of record on the date of filing via ECF, and upon the following pro se Defendants in the manner indicated below on the 17th day of January, 2012:

 s/ Fernando M. Bustos
FERNANDO M. BUSTOS

American National Trust & Investment Company, Inc.
c/o Phyllis Francis, Executive Vice President
922 Morrow Way, Ft. Wayne, IN 46808
*Via Email: jmccool@antimtrust.com and phyllisfrancis@antimtrust.com*

Phyllis Francis
922 Morrow Way
Ft. Wayne, IN 46808
*Via Email: jmccool@antimtrust.com and phyllisfrancis@antimtrust.com*

James McCool
59370 Bremen Highway
Mishawaka, IN 46544-6405
*Via Email: jmccool@antimtrust.com*

VERIFICATION

STATE OF TEXAS                        §
                                      §
COUNTY OF LUBBOCK                     §

BEFORE ME the undersigned notary public, on this day personally appeared RICK SCOTT, who, after being duly sworn, stated under oath that he is the Plaintiff in this action; that he has read the above First Amended Complaint; that every statement contained in the First Amended Complaint is within his personal knowledge and is true and correct.

_____
RICK SCOTT

SUBSCRIBED AND SWORN TO before me by RICK SCOTT on this the 17th day of January, A.D. 2012.

RENEE KEMP
NOTARY PUBLIC
STATE OF TEXAS
Commission Expires 6-16-2012

_____
Notary Public in and for Texas

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT,** dated as of October 19, 2011 ("Escrow Agreement"), is executed by and between the following parties:

**"Capital Partner":** Rick Scott an individual having a residence in Lubbock, Texas with a mailing address at PO Box 10232, Lubbock, Texas 79408 and holder of US passport number 421780714 hereinafter "Capital Partner";

**"Manager":** Barclay Capital Holdings, LLC, a Delaware Limited Liability Company with a business address is located at 108 North Main Street Suite 110 Somerset, Kentucky 42501, represented by Leonard G Barrie holder of Canadian Passport Number WB082694, hereinafter "Manager";

**"Financier":** Treasures FZE, with a business address at POBox 213788, Jumeirah, Wasl Road, Dubai, UAE, represented by Salvatore Carpanzano, holder of USA passport number 481627605 hereinafter "Financier";

*From time to time Capital Partner, Manager and Financier shall be collectively referenced as "the Parties" and*

**"Escrow Agent"**, American National Trust & Investment Company, LLC with a business address at 649 Cooper Rd, Atlantic Highlands NJ, represented by Ms. Phyllis Francis as authorized Escrow Agent hereunder ("Escrow Agent").

## RECITALS:

WHEREAS, Capital Partner and Manager desire to cooperate with Financier to obtain an MT 103/ Wire Disbursement in the form and substance set forth in Exhibit "B";

WHEREAS, Financier, has agreed, to cause its Banks to issue such a MT 103/ Wire Disbursement to Manager on the terms and conditions herein; and

WHEREAS, the Parties desire to set forth the terms of an agreement to escrow certain funds, and to disburse those funds to facilitate the transactions contemplated herein.

## STATEMENT OF AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, for themselves, their successors and assigns, hereby agree as follows:

1.  **Definitions**. The following terms shall have the following meanings when used herein:

"Bank Guarantee" (the "Bank Guarantee") shall mean a cash backed, callable bank instrument issued in the name of the Capital Partner by Financier, (as set forth in Exhibit



**EXHIBIT**

**"A"**

1

D), the purpose of which is to provide Capital Partner with collateral against the loss of its Escrow Funds (other than as transfer of the Escrow Funds provided for herein).

"Escrow Funds" shall mean the aggregate of Escrow Funds One and Escrow Funds Two i.e. Twenty Million US Dollars (US$20,000,000) deposited by Capital Partner with the Escrow Agent pursuant to this Escrow Agreement.

"Escrow Funds One" shall mean the sum of Two Million US Dollars (US$2,000,000) deposited by Capital Partner with Escrow Agent pursuant to this Escrow Agreement.

"Escrow Funds Two" shall mean the sum of Eighteen Million US Dollars (US$18,000,000) deposited by Capital Partner with Escrow Agent pursuant to this Escrow Agreement

"Expiration Date" shall mean thirty (30) calendar days after deposit of Escrow Funds One, subject to industry standard bank due diligence and anti money laundering compliance but in no case later than November 28, 2011 provided unless otherwise agreed to in writing. In the event that the terms hereof haven't been fulfilled by November 28, 2011, this Escrow Agreement shall terminate and the Escrow Funds returned to the Capital Partner.

"Medium Term Note" ("MTN") shall mean a financial instrument, issued by a private issuer which has been provided to Escrow Agent as security for the Escrow Funds in accordance with Section 3b, below a copy of which is set forth at Exhibit B.

"Payment Date" shall mean the date upon which cash funds via a SWIFT MT 103 in the amount of Five Hundred Million US Dollars (US$500,000,000) is delivered by Financier to Manager, which date shall be fifteen (15) calendar days after deposit of Escrow Funds Two, subject to industry standard bank due diligence and anti money laundering compliance and in no event later than the Expiration Date..

2.      **Appointment of and Acceptance by Escrow Agent.**

Capital Partner, Manager and Financier hereby appoint Escrow Agent to serve as Escrow Agent hereunder, and Escrow Agent hereby accepts such appointment in accordance with the terms of this Escrow Agreement.

3.      **Deposits into Escrow.** The following deposits shall be made to the Escrow Account. Upon receipt of each of the following Escrow Agent shall notify the Parties hereto at the email coordinates provided of confirmed receipt of each of the following:

(a)    **Capital Partner: Deposit of Escrow Funds:**

(i)    Escrow Funds One:  Within two (2) banking days of the execution of this Escrow Agreement, Capital Partner shall cause the sum of Two Million US Dollars (US$2,000,000) to be wired into the account designated by the Escrow Agent (hereinafter referenced as "Escrow Funds One") at JP Morgan Chase as set forth in **Exhibit A** of this Agreement.

2

(ii) The Parties agree that Capital Partner has the sole and absolute authority to recall or withdraw the Escrow Funds One from the Escrow Account in full without protest by Manager and/or Financier and/or Escrow Agent within eleven (11) banking days should the Bank Guarantee hasn't been approved by the Capital Partner or hasn't been timely delivered to Escrow Agent in favor of Capital Partner as set forth below.

(b)     **Financier: Deposit of MTN**:  Financier and Escrow Agent represent and warrant that the MTN having a principal value of One Hundred Million US Dollars (US$100,000,000) as set forth herein as **Exhibit B**, (CUSIP No. 902892AA6, ISIN No. US902892AA63) has been pledged to the Escrow Account as security for funds placed into the referenced Escrow Account.   To the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the cause of any loss to Capital Partner said MTN shall be liquidated, in whole or in part, as required to satisfy any court order directing recovery and or payment of funds in favor of Capital Partner.

(c)     **Financier: Deposit of Bank Guarantee (the "Bank Guarantee")**: Within ten (10) banking days of deposit of Escrow Funds One, Financier shall issue in the name of Capital Partner and delivered in trust to the Escrow Agent, a Bank Guarantee with a face value of Twenty Million US Dollars (US$20,000,000.00) for the benefit of, Capital Partner, in form and substance as set forth in **Exhibit "D,"** and with a maturity date of one year and one day from date of issue.   By its terms, the Bank Guarantee shall be callable on demand. The Bank Guarantee is provided by Financier to Capital Partner as security against any loss of Capital Partner's escrow funds pursuant to the terms of this Escrow Agreement and shall be tendered to Capital Partner in the event that there is a violation of use of the "Escrow Funds" as per Section 4 below.  The Bank Guarantee shall be surrendered to Financier pursuant to the terms set forth below in Section 7.

(d)     **Procedures for confirmation of the authenticity and the form and substance of the Bank Guarantee**:  (i) Escrow Agent confirms delivery/receipt of Bank Guarantee via hard copy  for and on behalf of Capital Partner (ii)  Capital Partner shall be able to inspect hard copy at JPMorgan Chase, 230 Park Avenue South, New York, NY 10003 upon two days notice and have it verified by a banker of Capital Partners choosing.

(e)     **Capital Partner: Escrow Funds Two:**

1.     Upon such confirmation of the Bank Guarantee, Capital Partner shall remit Eighteen Million US Dollars (US$18,000,000) to the Escrow Account subject to the following terms and conditions:

(i)     Escrow Funds Two shall be aggregated with Escrow Funds One for total Escrow Funds of Twenty Million US Dollars (US$20,000,000) and credited to Capital Partner's Escrow Account.

(ii)     Capital Partner authorizes Financier to make necessary arrangements to trigger an MT 103 in the amounts and on the terms stipulated above, subject to the restrictions on use of the Escrow Funds as set forth in Section 4 below.

(iii)     Upon confirmation by Escrow Agent that Escrow Funds One  have been remitted,  Financier shall then deliver the operative hard copy of the Bank Guarantee to

3

Escrow Agent for and on behalf of Capital Partner. Capital Partner shall have the right to inspect the physical hard copy of the Bank Guarantee by providing Escrow Agent two banking days advance notification via email wherein said inspection shall take place at JP Morgan Chase Bank, 230 Park Avenue South, New York, NY 10003.

4.     **Use of Escrow Funds:**  Capital Partner authorizes Manager and Financier to utilize the Escrow Funds in full, as per Section 3(e)(ii) above, to trigger a funding transaction wherein Financier delivers cash funds in the amount of Five Hundred Million US Dollars (US$500,000,000) by SWIFT MT 103 to the bank coordinates nominated by Manager. Until such time as Manager and Escrow Agent have  confirmed delivery receipt of Cash Funds via SWIFT MT 103 in the amount of Five Hundred Million US Dollars (US$500,000,000), the Escrow Account shall be restricted by the following covenants: (i) the Escrow Funds cannot be removed, (ii) title, control or ownership of the Escrow Funds cannot be transferred; (iii) the Escrow Funds cannot be encumbered;  (iv) there is no recourse to Capital Partner for any action taken by Manager; and (v) Escrow hasn't expired pursuant to the terms of this Agreement. Specifically, this means that Manager shall assume sole and complete responsibility for any and all debt incurred as a result of the delivery of the cash funds to Manager and that Financier fully acknowledges and confirms that there shall be no recourse against Capital Partner for the return of any portion of the cash funds received by Manager.

5.     **Bank to Bank Due Diligence:**

i. Due Diligence Related to Issuance of the Bank Guarantee: Financier represents and warrants that within five (5) banking days of the posting of the Escrow Funds One to the Escrow Account and submission of industry standard bank due diligence from Capital Partner as may be required by Financier's bank. Financier shall have completed its due diligence and confirmed its ability to issue and deliver the subject Bank Guarantee in for and substance as agreed in favor of Capital Partner.

ii.  Due Diligence Related to Delivery of the Swift MT 103 Cash Funds:  Financier represents and warrants that within five (5) banking days of the posting of the Escrow Funds Two to the Escrow Account and submission of industry standard bank due diligence from Manager as may be required by Financier's bank it shall initiate industry standard bank to bank compliance and confirmation by the issuing bank of the pending delivery of funds with Manager's receiving bank.

6.     **Good Faith Requirement to Cooperate in the Event of Performance Issues related to Banking Compliance or other Issues beyond either Party's Control:**

In the event any of the Parties encounters difficulty with Performance under this Escrow Agreement due to compliance (KYC/AML or other) and written notice is provided by the relevant banking or other institution, or as a result of other issues not controllable by the Party, such as posting delays within the banking system, both Parties agree to cooperate in overcoming such issues and shall reasonably extend time as required for performance but in no event beyond November 28, 2011.

7.     **Swift MT 103 Delivery Date Title Transfer of BG and Escrow Funds:**

The delivery of the SWIFT MT 103 cash funds in the amount of Five Hundred Million US Dollars (US$500,000,000) shall be completed on or about fifteen (15) calendar days

4

following the posting of Escrow Funds Two to the Escrow Account. To effectuate the completion of the Transaction, the Parties agree that no later than two banking days after the confirmation of receipt of the SWIFT MT 103 by Manager, and Escrow Agent as set forth in Section 4 above, Escrow Agent shall transfer all rights, title, interest and control of the Escrow Funds and the Bank Guarantee to the Financier.

**8.     Escrow Fees:**  Escrow Fees in the amount of Fifty Thousand Dollars ($50,000 USD) shall be paid by Manager/Capital Partner to Escrow Agent as payment for Escrow Agent's fees and costs in full.

**9.     Expiration of Escrow:**  If Escrow Agent has not received confirmation and verified the delivery of the SWIFT MT 103 as stipulated in Section 7, above on or before the Expiration Date of November 28, 2011, then the Escrow Agent shall: i. return all Escrow Funds to Capital Partner; and ii. transfer possession of and title to the Bank Guarantee to Financier.

**10.     Suspension of Performance or Disbursement Into Court.**
If, at any time, (i) there shall exist any dispute between the Parties or any other person with respect to the holding or disposition of all or any portion of the Escrow Funds or any other obligations of Escrow Agent hereunder, (ii) Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of all or any portion of the Escrow Funds or Escrow Agent's proper actions with respect to its obligations hereunder, or (iii) the Parties have not within 30 days of the furnishing by Escrow Agent of a notice of resignation pursuant to <u>Section 12</u> hereof appointed a successor Escrow Agent to act hereunder, then Escrow Agent shall take the following actions:

(a)     suspend the performance of any of its obligations (including without limitation any disbursement obligations) under this Escrow Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of Escrow Agent; and

(b)     petition (by means of an interpleader action) any court of competent jurisdiction and to pay into such court all funds held by it in the Escrow Funds for holding and disposition in accordance with the instructions of such court.

Escrow Agent shall have no liability to the Parties or any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of any delay in the disbursement of the Escrow Funds or any delay in or with respect to any other action required or requested of Escrow Agent except to the extent that the Escrow Agent has released the Escrow Funds in violation of the terms of this Agreement.

**11.     Investment of Funds.**
Unless otherwise stipulated all funds will be held by Escrow Agent in a non-interest bearing trust account at JPMorgan Chase as set forth in **Exhibit A**.

**12.     Resignation of Escrow Agent.**
Escrow Agent may resign and be discharged from the performance of its duties hereunder at any time by giving thirty (30) days prior written notice to the Parties specifying the date when such resignation shall take effect.  Upon any such notice of resignation, the Parties shall jointly appoint a successor Escrow Agent hereunder prior to the effective date of such resignation. The retiring Escrow Agent shall transmit all records pertaining to the Escrow Funds and shall

5

arrange the succession to the Escrow Account for the successor Escrow Agent, after making copies of such records as the retiring Escrow Agent deems advisable.

Any corporation or association into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all of the escrow business of the Escrow Agent's corporate trust line of business may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

### 13.   Liability of Escrow Agent.

a.    The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied.   The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Escrow Agreement, including without limitation the Loan Documents.   The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of any loss to the Parties.   Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Escrow Funds in accordance with the terms of this Escrow Agreement.   Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein.   Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same.   In no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages (including, but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.   Without limiting the generality of the foregoing, Escrow Agent shall not be responsible for or required to enforce any of the terms or conditions of any subscription agreement with any Subscriber or any other agreement between Parties and/or any Subscriber.   Escrow Agent shall not be responsible or liable in any manner for the performance by Financier or Capital Partner or any Subscriber of their respective obligations under any subscription agreement nor shall Escrow Agent be responsible or liable in any manner for the failure of either Parties or any third party (including any Subscriber) to honor any of the provisions of this Escrow Agreement.   Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, or relating to any dispute involving any party hereto, and shall incur no liability and shall be fully indemnified from any liability whatsoever in acting in accordance with the opinion or instruction of such counsel.   Both parties shall promptly pay, upon demand, the reasonable fees and expenses of any such counsel, which sum shall not exceed $10,000.

b.    The Escrow Agent is authorized, in its sole discretion, to comply with orders issued or process entered by any court of competent jurisdiction (defined as any court with jurisdiction over the bank in which the Escrow Funds were delivered) with respect to the Escrow Funds, without determination by the Escrow Agent of such court's specific jurisdiction in the matter.   If any portion of the Escrow Funds is at any time attached, garnished or levied upon under a court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by a court order, or in case any such order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Escrow Agent is authorized, in its sole discretion, to rely

6

upon and comply with any such order, writ, judgment or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action; and if the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

**14.    Indemnification of Escrow Agent.**  From and at all times after the date of this Escrow Agreement, the Parties shall, to the fullest extent permitted by applicable law, defend, indemnify and hold harmless the Escrow Agent and each director, officer, employee, attorney, agent and affiliate of Escrow Agent (collectively, the "Indemnified Parties") against any and all actions, claims (whether or not valid), losses, damages, liabilities, costs and expenses of any kind or nature whatsoever (including reasonable attorneys' fees as set forth in Section 13(a) above, costs and expenses) incurred by or asserted against any of the Indemnified Parties from and after the date hereof, whether direct, indirect or consequential, as a result of or arising from or in any way relating to any claim, demand, suit, action or proceeding (including any inquiry or investigation) by any person, including without limitation to Parties, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person under any statute or regulation, including, but not limited to, any federal or state securities laws, or under any common law or equitable cause or otherwise, arising from or in connection with the negotiation, preparation, execution, performance or failure of performance of this Escrow Agreement or any transactions contemplated herein, whether or not any such Indemnified Party is a party to any such action, proceeding, suit or the target of any such inquiry or investigation; provided, however, that no Indemnified Party shall have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted solely from the gross negligence or willful misconduct of such Indemnified Party.  Each Indemnified Party shall, in its sole discretion, have the right to select and employ separate counsel with respect to any action or claim brought or asserted against it. The obligations of the Parties under this Section 14 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

**15.    Compensation to Escrow Agent.**
Escrow Agent shall receive the sum as set forth in Section 8, above as total compensation for its services hereunder.  It is agreed that any and all fees and/or costs to include reasonable out-of-pocket expenses, travel expenses, telephone and facsimile transmission costs, postage (including express mail and overnight delivery charges), copying charges and the like in excess of the amount set forth in Section 8, above shall be remunerated by Financier under a separate agreement after closing of this Escrow Agreement. The obligations under this Section 15 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

**16.    Representations and Warranties.**

a. Each of the Parties respectively makes the following representations and warranties to Escrow Agent:

(a)    If it is a company, that it is duly organized, validly existing, and in good standing under the laws of the state of its incorporation or organization, and has full power and authority to execute and deliver this Escrow Agreement and to perform its obligations

7

hereunder. And if acting as an individual, that it is financially capable and is not legally restricted in any manner from participating in this transaction as contemplated herein.

(b)     This Escrow Agreement has been duly approved by all necessary action, including any necessary shareholder or membership approval, has been executed by its duly authorized officers, and constitutes its valid and binding agreement, enforceable in accordance with its terms.

(c)     The execution, delivery, and performance of this Escrow Agreement will not violate, conflict with, or cause a default under its certificate of incorporation, articles of organization or bylaws, operating agreement or other organizational documents, as applicable, any applicable law or regulation, any court order or administrative ruling or decree to which it is a party or any of its property is subject, or any agreement, contract, indenture, or other binding arrangement to which it is a party or any of its property is subject.

(d)     All of its representations and warranties contained herein are true and complete as of the date hereof and will be true and complete at the time of any deposit to or disbursement from the Escrow Funds.

(e).     Capital Partner, Manager and Financier further represent and warrant to Escrow Agent that no party other than the Parties have, or shall have, any lien, claim or security interest in the Escrow Funds or any part thereof.  No financing statement under the Uniform Commercial Code is on file in any jurisdiction claiming a security interest in or describing (whether specifically or generally) the Escrow Funds or any part thereof.

8

**17.    Important Information For Opening An Account.**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.  For a non-individual person such as a business entity, a charity, a Trust, or other legal entity, we ask for documentation to verify its formation and existence as a legal entity.    We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

The Parties acknowledge that any personal or company information set forth herein (including the Exhibits hereto) and any additional information provided or secured as a result of bank compliance or due diligence is being requested in part in connection with the USA Patriot Act, Pub.L.117-56 (the "Act"), and Parties agree to provide any additional information requested by the Escrow Agent in connection with the Act or any similar legislation or regulation to which Escrow Agent is subject, in a timely manner. Parties each represents that its respective identifying information set forth on **Exhibit E**, including without limitation, its Taxpayer Identification Number assigned by the Internal Revenue Service or any other taxing authority, is true and complete on the date hereof and will be true and complete at the time of any disbursement of the Escrow Funds.

**18.    Consent to Jurisdiction and Venue**.  Jurisdiction and venue shall be had in the United States District Court for the State of Texas (Northern District).  If such court lacks federal subject matter jurisdiction, the Parties agree that the District Court of the State of Texas in or near Lubbock, TX.  Any of these courts shall be proper venue for any such lawsuit or judicial proceeding and the parties hereto waive any objection to such venue.  The parties hereto consent to and agree to submit to the jurisdiction of any of the courts specified herein and agree to accept service of process to vest personal jurisdiction over them in any of these courts.

**19.    Notice.**
All notices, approvals, consents, requests, and other communications hereunder shall be in writing and shall be deemed to have been given when the writing is delivered if given or delivered by hand, overnight delivery service, email or facsimile transmitter (with confirmed receipt) to the address or facsimile number set forth on **Exhibit E** hereto, or to such other address as each party may designate for itself by like notice, and shall be deemed to have been given on the date deposited in the mail, if mailed, by first-class, registered or certified mail, postage prepaid, addressed as set forth on **Exhibit E** hereto, or to such other address as each party may designate for itself by like notice.

**20.    Amendment or Waiver.**
This Escrow Agreement may only be changed, waived, discharged or terminated by a writing signed by the Parties and Escrow Agent.  No delay or omission by any party in exercising any right with respect hereto shall operate as a waiver.  A waiver on any one occasion shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion.

**21.    Severability.**
To the extent any provision of this Escrow Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Escrow Agreement.

11

### 22.    Governing Law.

This Escrow Agreement shall be construed and interpreted in accordance with the laws of the State of Texas, without giving effect to the conflict of laws principles thereof.

### 23.    Entire Agreement, Survivability.

This Escrow Agreement constitutes the entire agreement between the parties relating to the acceptance, collection, holding, investment and disbursement of the Escrow Funds and sets forth in their entirety the obligations and duties of the Escrow Agent with respect to the Escrow Funds. All of the obligations, representations and  actions to be taken by or on behalf of any of the parties hereto shall survive the termination of this Agreement until such time as each of the parties has fully performed, complied with, and this Agreement has reached its full conclusion.

### 24.    Binding Effect.

All of the terms of this Escrow Agreement, as amended from time to time, shall be binding upon, inure to the benefit of and be enforceable by the respective successors and assigns of Parties and Escrow Agent.

### 25.    Execution in Counterparts.

This Escrow Agreement and any joint written instructions may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction.  The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

### 26.    Termination of Escrow Account

This is Escrow Account shall not be closed for any reason unless in accordance with the provisions of this Agreement.

**REST OF THIS PAGE LEFT INTENTIONALLY BLANK**

**SIGNATURE PAGE FOLLOWS**

12

**IN WITNESS WHEREOF,** the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written

Capital Partner   By: _____
Name: Rick Scott
Date:


Manager   By: _____
Name:       Leonard G. Barrie
Title:       Managing Member
Date:                                                                                7


Financier       By: _____
                Name: Salvatore Carpanzano
                Company: Treasures FZE
                Title: Authorized Representative


American National Trust & Investment
Management Company (ANTIMC) LLC.
As Escrow Agent.

By: _____
Name: Ms. Phyllis Francis
Title: Executive Vice President, A.N.T.I.M.C

13

**IN WITNESS WHEREOF,** the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written

**Capital Partner**   By: _____
Name: Rick Scott
Date:

**Manager**   By: _____
Name:        Leonard G. Barrie
Title:        Managing Member
Date:

**Financier**      By: _____
           Name: Salvatore Carpanzano
           Company: Treasures  FZE
           Title: Authorized Representative

**American National Trust & Investment**
**Management Company (ANTIMC) LLC.**
**As Escrow Agent.**

By: _____
Name: Ms. Phyllis Francis
Title: Executive Vice President,  A.N.T.I.M.C

13

## EXHIBIT A
## ESCROW ACCOUNT COORDINATES

1.   Escrow Account.

| | |
|---|---|
| BANK: | JP Morgan Chase |
| BANK ADDRESS: | 230 Park Avenue South New York, NY |
| ACCOUNT NAME: | American National Trust and Investment Management Company (Trust Account) |
| WIRE ABA: | 021100021 |
| ACCOUNT No: | 3031589686 |
| SWIFT CODE: | CHASUS33 |
| BANK OFFICER: | Shirley Zhu |
| BANK TELEPHONE: | 1-212-475-0254 |
| BANK FAX: | 1-866-272-8167 |

2.   Escrow Agent Fees.   **TO BE PAID BY MANAGER/CAPITAL PARTNER** / Flat fee covering all fees, costs and expenses of any kind.

TOTAL DUE FROM MANAGER: Fifty Thousand Dollars (US$50,000) As set forth in Section 8, above.

The Escrow Agent Fees are payable upon execution of the escrow documents.  In the event the escrow is not funded, the Acceptance Fee and all related expenses, including attorneys' fees, remain due and payable, and if paid, will not be refunded.  Annual fees cover a full year in advance, or any part thereof, and thus are not pro-rated in the year of termination.

The fees quoted in this schedule apply to services ordinarily rendered in the administration of an Escrow Account and are subject to reasonable adjustment based on final review of documents, or when the Escrow Agent is called upon to undertake unusual duties or responsibilities, or as changes in law, procedures, or the cost of doing business demand.   Services in addition to and not contemplated in this Escrow Agreement, including, but not limited to, document amendments and revisions, non-standard cash and/or investment transactions, calculations, notices and reports, and legal fees, will be billed as extraordinary expenses.

Unless otherwise indicated, the above fees relate to the establishment of one escrow account.  Additional sub-accounts governed by the same Escrow Agreement may incur an additional charge.  Transaction costs include charges for wire transfers, checks, internal transfers and securities transactions.

14

**EXHIBIT B**
**MT 103 Specimen**
**Operative Language**

We XXXXX Bank with full banking responsibility hereby present our irrevocable, transferable and callable cash back MT 103 SWIFT transfer in favor of XXXXX with Account IBAN No. XXXX in the amount of $500,000,000 (Five Hundred Million Dollars Only). This fund is for investment purpose.

We hereby confirm that the funds are good, clean and declared funds of non criminal origin and are from a legal source. This irrevocable SWIFT is binding fully performed due bill and immediately callable for cash payment. We confirm that payment should be released immediately.

This confirmed SWIFT MT 103 is subject to no confirmation to follow and no emails, faxes phone calls and telex.

This unconditional, irrevocable, assignable, transferable and callable confirmed SWIFT MT 103 transfer is valid for same day payment, the day of receipt.

This is an operative instrument for and on behalf of XXXXX Bank, subject to the international remittance regulation of XXXXXXXX Bank to external bank account payment. Please advise beneficiary of funds transfer of the amount of $500,000,000 (Five Hundred Million Only). Fund is for investment purpose.

15

**EXHIBIT C**
**MTN**

16

## EXHIBIT D
## SPECIMEN BANK GUARANTEE

Bank:
Bank Guarantee No.:
Currency Code: *United States Dollars*
Date of Issue:
Expiry Date:
CUSIP NO.:
ISIN NO.:
Applicant:
Beneficiary: Rick Scott
Amount: *United States Dollars Twenty Million (US$20,000,000.00) Only*

We *Issuing Bank Name, Bank Address,* represented by authorized bank officers signed below confirm with full bank responsibility that at the request of our client, *Client Name,* for the value received by us, hereby irrevocably and unconditionally without protest or notification promise to pay against this Bank Guarantee/SBLC No.: *Bank Guarantee No xxxxxxxx* in favor of Rick Scott or assigns at any time after December 28, 2011, the sum of *US$20,000,000.00* (United States Dollars Twenty Million) in the lawful currency of the United States of America upon presentation of this Bank Guarantee at our counters at *Bank Address* on at any time after December 28, 2011, but not later than fifteen days after the maturity date. Such payment shall be made without set-off and clear of any deductions, charges, fees or withholdings of any nature, now or hereafter imposed, levied, collected, withheld or assessed by the government of the Issuing Bank or any political subdivision or authority thereof or herein. This Guarantee is transferable, assignable and divisible without presentation to us or payment of further fees. This Bank Guarantee is an operative instrument which is callable at the issuing bank and is subject to the Uniform Customs practice of documentary credit (1983 Revision) and shall be governed and construed by the laws of the United States in accordance with ICC Publication 600 latest version, Paris France.

Bank Officer 1:                          Bank Officer 2:
Authorized Signatory                 Authorized Signatory
Name:                                        Name:
Title:                                          Title:
Code:                                         Code:
BANK STAMP / SEAL

17

**EXHIBIT E**
**NOTICE INFORMATION**

1.    Rick Scott
      PO Box 10232
      Lubbock, Texas 79408:

      Attn: Rick Scott
      Email: rscott@scottmanufacturing.com

      With Copy To: Bradford L. Moore
                    508 W Broadway Street
                    Brownfield, Texas 79316
                    brad@bradfordlmoore.com


2.    Barclay Capital Holdings, LLC
      118 North Main Street Suite 110
      Somerset, Kentucky 42501

      Attn:   Len G Barrie
              lbarrie9@gmail.com

      With copy to:  Jonathan D. Strum
                     5638 Utah Avenue, NW
                     Washington DC 20015
                     jdstrum@struminternational.com


3.    Treasures FZE
      POBox 213788
      Jumeirah, Wasl Road
      Dubai, UAE,

      Attn: Salvatore Carpanzano
      Email: carpanzano7@aol.com


4.    American National Trust & Investment Company
      649 Cooper Road
      Atlantic Highlands NJ

      Attn: Ms. Phyllis Francis
      Email: jmccool@antimtrust.com


18

## AMENDMENT TO ESCROW AGREEMENT

This is an Amendment dated October 31, 2011 to the Escrow Agreement, incorporated herein by reference, between the Parties, dated October 19, 2011 ("Escrow Agreement"):

"Capital Partner":  Rick Scott an individual having a residence in Lubbock;  "Manager": Barclay Capital Holdings, LLC,  a Delaware Limited Liability Company represented by Leonard G Barrie;  "Financier": Treasures FZE, with a business address at POBox 213788, Jumeirah, Wasl Road, Dubai, UAE, represented by Salvatore Carpanzano; and Escrow Agent", American National Trust & Investment Company, LLC with a business address at 649 Cooper Rd, Atlantic Highlands NJ, 07716 represented by Ms. Phyllis Francis as authorized Escrow Agent.

This Amendment shall include as a signatory, Products By Big 12 Inc., a Texas corporation, 10609 FM 1585, Wolfforth, TX, 79382-4625 Tel: (806) 747-3395 ("Products by Big 12") as Assignee.

### ASSIGNMENT OF RIGHT TO RECEIVE BANK GUARANTEE

1.      Capital Partner hereby agrees that the right to have the Bank Guarantee provided for in the Escrow Agreement issued him shall be assigned to Products By Big 12, Inc.

2.      Products By Big 12, of which Capital Partner is President, shall be named on the Bank Guarantee.

3.      Both Capital Partner and Products By Big 12 shall jointly and or severally, have any and all rights of enforcement under the Escrow Agreement as would Capital Partner alone.

4.      All other provisions of the Escrow Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to the Escrow Agreement to be executed as of the date first above written

Capital Partner                                          Manager

By:                                                       By:
   Rick Scott                                                Leonard G. Barrie, Managing Member


Financier                                                 American National Trust & Investment
                                                          Management Company (ANTIMC)
                                                          As Escrow Agent

By:                                                       By:
   Salvatore Carpanzano                                      Phyllis Francis
   Authorized Representative                                 Executive Vice President

                                                             JAMES McCoy


Products By Big 12 Inc.

By:
   Rick Scott, President


**EXHIBIT**

"B"

## SECOND AMENDMENT TO THE ESCROW AGREEMENT

Reference is here made to the Escrow Agreement by and between the Parties , dated October 19, 2011 and the First Amendment thereto dated October 31, 2011 ("Escrow Agreement"):

The parties hereto agree that the Escrow Agreement is in full force and effect but that pursuant to Section 3(a)(ii) Capital Partner has through today to inspect a Bank Guarantee ("BG") which was to be delivered to secure the Escrow Funds. There have been delays in procuring the BG and the parties are desirous of amending Section 3(a)(ii) to read as follows: "The Parties agree that Capital Partner has the sole and absolute authority to recall or withdraw the Escrow Funds One from the Escrow Account in full without protest by Manager and/or Financier and/or Escrow Agent after eleven (11) banking days from the date listed below in the event that the BG isn't delivered to JP Morgan NYC as stated in Escrow Agreement.

All other provisions of the Escrow Agreement continue in full force and effect.

Executed this 7th day of November, AD 2011.

CAPITAL PARTNER

_____

FINANCIER

_____

PRODUCTS BY BIG 12, INC.

MANAGER

_____

ESCROW AGENT

_____

EXHIBIT
"C"

## SECOND AMENDMENT TO THE ESCROW AGREEMENT

Reference is here made to the Escrow Agreement by and between the Parties , dated October 19, 2011 and the First Amendment thereto dated October 31, 2011 ("Escrow Agreement"):

The parties hereto agree that the Escrow Agreement is in full force and effect but that pursuant to Section 3(a)(ii) Capital Partner has through today to inspect a Bank Guarantee ("BG") which was to be delivered to secure the Escrow Funds. There have been delays in procuring the BG and the parties are desirous of amending Section 3(a)(ii) to read as follows: "The Parties agree that Capital Partner has the sole and absolute authority to recall or withdraw the Escrow Funds One from the Escrow Account in full without protest by Manager and/or Financier and/or Escrow Agent within eleven (11) banking days from the delivery of the BG to JP Morgan Chase in the event that the BG hasn't been approved by the Capital Partner or in the event that the BG isn't delivered."

All other provisions of the Escrow Agreement continue in full force and effect.

Executed this 4th day of November,  AD 2011.

CAPITAL PARTNER

MANAGER

FINANCIER

ESCROW AGENT

PRODUCTS BY BIG 12, INC.

EXHIBIT "D"

AFFIDAVIT

STATE OF TEXAS         §
                                   §
COUNTY OF LUBBOCK    §

BEFORE ME, the undersigned authority, on this day personally appeared RICK SCOTT, who being by me first duly sworn, upon his oath deposed and said:

"My name is Rick Scott, and I am the Plaintiff in an action against American National Trust & Investment Company, LLC, American National Trust & Investment Management Company, LLC, Phyllis Francis, James McCool, John Salvatore Carpanzano, and JPMorgan Chase Bank, National Association, to which this Affidavit is attached. The foregoing pleading prays for a restraining order to enjoin the Defendants from the actions as alleged therein. On October 19, 2011, I executed a document entitled "Escrow Agreement," a true and correct copy of which is attached to the foregoing pleading and marked as Exhibit "A". On October 21, 2011, I executed an Amendment to Escrow Agreement, a true and correct copy of which is attached as Exhibit "B" to the foregoing pleading.

On November 4, 2011, and again on November 7, 2011, I executed the Second Amendment to the Escrow Agreement, a true and correct copy of which is attached to the foregoing pleading and marked as Exhibit "C". Pursuant to the terms of the Escrow Agreement, I caused to be wire-transferred on October 21, 2011, $2,000,000.00 from Lone Star State Bank of West Texas to JPMorgan Chase for the attention of Shirley Zhu, to be placed in an Escrow Account D 3031589686, with American National Trust & Investment Management Company and American National Trust & Investment Management Company, LLC as Trustee. A copy of transmittal of the wire transfer is attached and made a part hereof for all purposes and marked as Exhibit "D-1". Under the terms of the Escrow Agreement (Exhibit "A"), the wire was to be placed in Account No. D 3031589686, and that, in fact, was where the monies were sent.

Under the terms of Exhibits "A", "B" and "C" (the Escrow Agreement and Amendments), certain instruments were to be brought and deposited with the escrow agent to secure the escrow funds. Neither the Medium Term Note, nor the Bank Guarantee as specified under the terms of the Escrow Agreement and Amendments, has been tendered to the Escrow Agent, nor has there been compliance by the escrow agent with verification by me or any professional on my behalf.

On or about December 13, 2011, American National Trust & Investment Company LLC, and American National Trust & Investment Management Company, LLC, and in particular James McCool, provided my counsel a "screen shot" of the supposed escrow fund. A true and correct of the screen shot as provided is attached hereto and made a part hereof for all purposes

and marked as Exhibit "D-2". Exhibit "D-2" indicates that the fund has a balance in excess of $2,000,000.00, but it also indicates an account number xxx xx xxxx 412213. The account number ending with 412213 is a different account number than the account to which the initial $2,000,000.00 Escrow Funds One was wired which ended in 589686. Upon receiving "D-2", I wondered if the funds had been moved, and I questioned whether or not the screen shot as reflected by Exhibit "D-2" is a valid and legitimate screen shot from JPMorgan Chase Bank, National Association, and the escrow account, or whether monies have been moved and/or dissipated from the account.

Further, on December 13, 2011, I caused counsel to send an e-mail to Mr. McCool questioning the account numbers and requesting the full name of the depository, full account name and number. A true and correct copy of the e-mail is attached hereto and made a part hereof for all purposes and marked as Exhibit "D-3". When no response was received, I requested my attorney to once again contact Mr. McCool and request that information. A true and correct copy of the e-mail to Mr. McCool is attached hereto and made a part hereof for all purposes and marked as Exhibit "D-4". In response to my attorney's request, Mr. McCool, on behalf of himself and American National Trust & Investment Company LLC and American National Trust & Investment Management Company, LLC responded that he had no obligation to furnish information about "Treasures," with my attorney responding that he did not ask anything about Treasures in inquiring whether or not my escrow had been transferred to a third party. A true and correct copy of the e-mail string is attached and made a part hereof for all purposes and marked as Exhibit "D-5".

On December 14, 2011, a formal letter was e-mailed informing the parties that the escrow had expired by its own term and requesting a return of the $2,000,000.00 escrow fund. A true and correct copy of this letter is attached hereto and made a part hereof for all purposes and marked as Exhibit "D-6".

On December 15, 2011, an e-mail was sent to Mr. McCool demanding return of the $2,000,000.00 Escrow Funds One and deadlining the return to Friday, December 16, 2011 at 5:00 p.m. Despite the deadline, the escrow funds have not been returned. I have fear that the escrow account has been dissipated and considering the statement of the escrow agent that Escrow Funds One has been transferred to an entity called "Treasures."

I do not know any way to secure the Escrow Funds One other than to request the Court to immediately restrain the Defendants from dissipating monies, which according to the contractual terms of the Escrow Agreement and Amendments should be returned to me in full.

All of the foregoing is within my personal knowledge and is true and correct."

Further Affiant saith not.

SIGNED this _____ 17th _____ day of January, A.D. 2012.

_____
RICK SCOTT, Affiant

SUBSCRIBED AND SWORN TO before me by RICK SCOTT on this the _____ 17th _____ day of January, A.D. 2012.

RENEE KEMP
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 6-16-2012

_____
Notary Public in and for Texas