**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| **RICK SCOTT** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMERICAN NATIONAL TRUST &** | § | **NO. 5:12-CV-00006-C** |
| **INVESTMENT MANAGEMENT** | § | |
| **COMPANY, LLC a/k/a** | § | |
| **AMERICAN NATIONAL TRUST &** | § | |
| **INVESTMENT COMPANY, LLC;** | § | |
| **PHYLLIS FRANCIS; JAMES McCOOL** | § | |
| **a/k/a JAMES McCOOL III and a/k/a** | § | |
| **JAMES F. McCOOLE;** | § | |
| **SALVATORE CARPANZANO a/k/a** | § | |
| **JOHN SALVATORE CARPANZANO;** | § | |
| **CARMELA ANN CARPANZANO;** | § | |
| **MARISA BELCASTRO; BARCLAY** | § | |
| **CAPITAL HOLDINGS, LLC; LEONARD** | § | |
| **G. BARRIE a/k/a LEN BARRIE; J.** | § | |
| **SCOTT MONTANA; TREASURES FZE;** | § | |
| **TERRASTONE PROJECT HOLDINGS,** | § | |
| **LLC; AHMED HIJAWI a/k/a DAVID** | § | |
| **LEVY a/k/a DAVID LEVI; ALEXANDER** | § | |
| **THOMAS; McCLAIN; GREENBERG** | § | |
| **TRAURIG,L.L.P.; GREENBERG** | § | |
| **TRAURIG, P.A.** | § | |

<u>**PLAINTIFF'S FOURTH AMENDED COMPLAINT**</u>

TO THE HONORABLE SAM R. CUMMINGS, UNITED STATES DISTRICT JUDGE PRESIDING:

1.     NOW COMES Plaintiff Rick Scott (hereinafter referred to as "Scott") complaining of and

against American National Trust & Investment Management Company, LLC a/k/a American

National Trust & Investment Company, LLC (hereinafter referred to as "Trust"), Phyllis Francis

(hereinafter referred to as "Francis"), James McCool a/k/a James McCool III and a/k/a James F.

McCoole (hereinafter referred to as "McCool"), Salvatore Carpanzano a/k/a John Salvatore

Carpanzano (hereinafter referred to as "Carpanzano"), Carmela Ann Carpanzano (hereinafter

referred to as "Carmela Carpanzano"), Marisa Belcastro (hereinafter referred to as "Belcastro"),

Barclay Capital Holdings, LLC (hereinafter referred to as "Barclay"), Leonard G. Barrie a/k/a Len

Barrie (hereinafter referred to as "Barrie"), J. Scott Montana (hereinafter referred to as

"Montana"), Treasures FZE (hereinafter referred to as "Treasures"), Terrastone Project Holdings,

LLC (hereinafter referred to as "Terrastone"), Ahmed Hijawi a/k/a David Levy a/k/a David Levi

(hereinafter referred to as "Hijawi"), Alexander Thomas McClain (hereinafter referred to as

"McClain"), Greenberg Traurig, L.L.P. and Greenberg Traurig, P.A. As used herein the term

"Defendants."   For cause of action, Scott would respectfully show the Court the following:

## I.
## PARTIES

2.      Plaintiff Rick Scott, is a citizen of the State of Texas who resides in Lubbock, Texas.

3.      Defendant American National Trust & Investment Management Company, LLC a/k/a

American National Trust & Investment Company, LLC, ("Trust"), is a supposed limited liability

company**.  A default judgment has been entered as to the Trust on June 14, 2012 (Docket

No. 140).**

4.      Defendant Phyllis Francis ("Francis"), purports to be the Executive Vice President of

Trust. Defendant Francis' presence and whereabouts are unknown such that all attempts at service

have proven unsuccessful; although she has been served with copies of all documents filed with

the Court per an Order of the 72nd Judicial District Court of Lubbock County, Texas, which Court

presided over this case before its removal to this Court. Scott also sought to depose Carpanzano,

through which Scott hoped to obtain information concerning the whereabouts of Francis.

Carpanzano refused to appear for deposition.   Scott continues in his efforts to locate Francis.

5.      Defendant James McCool ("McCool"), is also known as James McCool III and James F.

McCoole, and he purports to be the President of Trust.  Scott personally served McCool with

process. **A default judgment has been entered as to McCool January 17, 2013 (Docket No. 255).**

6.      Defendant Salvatore Carpanzano ("Carpanzano"), is also known as John Salvatore Carpanzano.   He is a citizen of the State of New York, and has made an appearance herein.   **A default judgment has been entered as to Carpanzano on June 14, 2012 (Docket No. 140).**

7.      Defendant Marisa Belcastro ("Belcastro") is the wife of Carpanzano.   **A default judgment has been entered as to Belcastro on August 29, 2012 (Docket No. 168).**

8.      Defendant Carmela Ann Carpanzano ("Carmela Carpanzano"), is a citizen of the State of Florida, and has previously been served with process.   **A default judgment has been entered as to Carmela Carpanzano on June 14, 2012 (Docket No. 140).**

9.      Defendant Barclay Capital Holdings, LLC ("Barclay"), is a Delaware limited liability company.   **A default judgment has been entered as to Barclay on June 14, 2012 (Docket No. 140).**

10.     On information and belief, Defendant Leonard G. Barrie, also known as Len Barrie ("Barrie") is a citizen of Canada.   **A default judgment has been entered as to Barrie on August 29, 2012 (Docket No. 168).**

11.     Defendant J. Scott Montana ("Montana") is a citizen of California.   **A default judgment has been entered as to Montana on June 14, 2012 (Docket No. 140).**

12.     On information and belief, Defendant Treasures FZE ("Treasures") is a Free Zone Enterprise in Dubai, United Arab Emirates, and may be served with process by serving its sole shareholder, Ahmed Hijawi a/k/a David Levy a/k/a David Levi.

13.     On information and belief, Defendant Ahmed Hijawi ("Hijawi") a/k/a David Levy a/k/a David Levi is a citizen of United Arab Emirates, whose principal business address is P.O. Box 213788 Jumeira, Wasl Road, Dubai-United Arab Emirates, where he may be served with process.

14.     Defendant Alexander Thomas McClain ("McClain") is a citizen of the State of Georgia. He has been served with process and entered an appearance.

15.     Defendant Terrastone Project Holdings, LLC ("Terrastone") is a Delaware limited liability company.   **A default judgment has been entered as to Terrastone on June 14, 2012 (Docket No. 140).**

16.     Defendant Greenberg Traurig, L.L.P. is a limited liability partnership organized under the laws of the State of New York. This Defendant has been served with process under Scott's Third Amended Complaint and has appeared in this action.

17.     Defendant Greenberg Traurig, P.A. is a foreign professional association organized under the laws of the State of Florida.   This Defendant has been served with process under Scott's Third Amended Complaint and has appeared in this action.   Defendants Greenberg Traurig, L.L.P. and Greenberg Traurig, P.A. shall be identified collectively as ("Greenberg Traurig").

### III.
### JURISDICTION AND VENUE

18.     Federal question subject matter jurisdiction exists under 28 U.S.C. § 1331 because this action arises from international banking transactions pursuant to 12 U.S.C. § 632.   Diversity jurisdiction also exists under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is a civil action between citizens of different states and citizens of foreign states.

19.     Venue is proper in this district and division under 28 U.S.C. § 1391 because this is the district and division in which a substantial part of the events or omissions giving rise to Scott's claims occurred.   Furthermore, the Escrow Agreement upon which this suit is predicated contains a forum selection clause for this court.

20.     Venue is also proper under the Escrow Agreement at issue in this case.   It contains a forum

selection clause by which the parties agreed that "[j]urisdiction and venue shall be had in the United States District Court for the State of Texas (Northern District)" (Ex. "A" at ¶ 18).   This clause applies to those non-signatory Defendants as they engaged in concerted misconduct with those Defendants who signed the Escrow Agreement and are vicariously liable for acts of such Defendants.   Moreover, each of the Defendants is a transaction participant such that they are bound by the forum selection clause of the Escrow Agreement.   Alternatively, even in the absence of the forum selection clause of the Escrow Agreement, each of the Defendants had sufficient contacts with the State of Texas such that the assumption of jurisdiction does not offend the traditional notions of fair play and substantial justice and comports with due process of law.

## IV.
## FACTS

21.    Scott is a member and co-owner of Cat Island, LLC ("Cat"). Cat is an entity which is developing a resort in the Bahamas.   Cat has been looking for a source to secure additional financing to complete the resort.

22.    In the summer of 2011, Scott was introduced to Montana.   They began discussions related to Cat procuring financing for the construction of the resort.   Montana referred Scott to Barrie which resulted in contract negotiations to procure the financing.   In the process, Scott traveled to New Braunfels, Texas and New York City, where he met with Montana. During the New York meeting, Scott was also introduced to Shirley Zhu at J. P. Morgan Chase Bank ("Chase").

23.    Ultimately an agreement was reached whereby Cat would procure approximately $214,500,000 in financing from Barclay.   Under the arrangement, Barclay was to secure its funding through Treasures.   Specifically, Treasures was to fund some $500,000,000 to Barclay which Barclay was to use to fund multiple projects, one of which was to be a loan to Cat of funds totaling $214,500,000.

24.     Mr. Bradford L. Moore, attorney for Scott, received a copy of an original letter from Treasures dated October 18, 2011, via Mr. Jonathan Strum, attorney for Barclay, which allegedly contained proof that Carpanzano was an agent for and represented Treasures in the United States. This letter was purportedly signed by Mr. Hassan Al Salam, Director of International Affairs on behalf of Treasures.   A true and correct copy of this letter is attached herewith as Exhibit "F."

25.     In speaking with Mr. Strum, Mr. Moore expressed concerns regarding Carpanzano's legitimacy.   Mr. Strum agreed that Mr. Moore's uneasiness was justified, and he suggested that they do exactly as the Treasures October 18, 2011 letter had suggested and that they contact Treasures' legal counsel, Greenberg Traurig and its associate attorney, Defendant McClain.   Mr. Moore inquired of Mr. Strum as to McClain, and Mr. Strum told Mr. Moore that he thought McClain was a partner with Greenberg Traurig.   Mr. Moore and Mr. Strum both knew Greenberg Traurig to be a large international law firm, and Mr. Strum suggested that they could receive further assurances as to Carpanzano, Treasures and Hijawi by questioning McClain.

26.     On Wednesday, October 19, 2011, at approximately 10:00 a.m. central time, Mr. Moore and Mr. Strum jointly called McClain at phone number 678-553-2390, which was McClain's direct dial phone number at the Greenberg Traurig law firm.

27.     During this telephone call, and in response to various questions from Messrs. Moore and Strum, McClain made the following representations:

    A.     That Greenberg Traurig was the United States counsel for Treasures, and that McClain, as an attorney with Greenberg Traurig, had worked on numerous transactions for Treasures;

    B.     That McClain knew Hijawi, and had personally met him;

    C.     That McClain had represented Treasures and Hijawi for several years in a variety of complex domestic and international transactions;

     D.      That Carpanzano was, in fact, the United States representative for Treasures;

     E.      That Hijawi had used Defendant American National Trust & Investment Company, LLC as the escrow agent on numerous transactions, and that McClain had served as counsel, and there were no problems with those prior transactions;

     F.      That he, McClain while acting as an employee of Greenberg Traurig, had provided legal work on at least 10 transactions in the past few years in which Carpanzano and Terrastone represented Treasures and Hijawi, and that Carpanzano and Terrastone had always represented Treasures and Hijawi in the United States;

     G.      That McClain, as an employee of Greenberg Traurig, was currently providing legal work  to conclude a transaction that Treasures and Hijawi had financed in the United States that involved Carpanzano and Terrastone;

     H.      That based on his experience working as counsel in the Greenberg Traurig law firm, that Treasures and Hijawi honored their contractual commitments, that they were a legitimate company, Carpanzano had the authority to transact business on their behalf, and once the contract was entered into, it would be fulfilled.

28.     McClain requested that Messrs. Moore and Strum furnish him with their email addresses. In response, Mr. Strum sent from his BlackBerry an email to McClain at McClain's Greenberg Traurig email address and sent a copy to Mr. Moore.   In response, at 10:24 a.m. central time on October 19, 2011, McClain sent an email to both Mr. Strum and Mr. Moore acknowledging the prior phone call.   This email was sent from McClain's Greenberg Traurig email address.   The email reflected a time of 11:24 a.m., presumably from the Eastern United States time zone, as McClain officed in the Atlanta, Georgia office of Greenberg Traurig.   In response to the email, Mr. Moore sent an email to McClain at his Greenberg Traurig email address requesting the correct spelling of Hijawi's name, and at 11:39 a.m. eastern time, Mr. Moore received a response from

McClain at the Greenberg Traurig law firm.   A true and correct copy of this email string is attached herein as Exhibit "G."   Were it not for the assurances that McClain gave Mr. Moore in his capacity as an attorney working for the Greenberg Traurig law firm which represented Treasures and Hijawi, Mr. Moore would not have allowed his client Scott to proceed forward with the placement of the escrow funds.

29.      Furthermore, in December of 2011, after Scott sued Carpanzano in Texas state district court before removal of this case to this Court, McClain contacted Mr. Moore.   In that email, McClain stated he was "joining as transactional in-house counsel for Terrastone Finance and he would coordinate litigation counsel for Carpanzano."   He also represented to Mr. Moore that Terrastone was the United States subsidiary for Treasures, and that Treasures did all of its United States business through Terrastone and Carpanzano.   Thereafter, McClain's emails began arriving to Mr. Moore from his email address associated with Terrastone.   A true and correct copy of the email referenced in this paragraph is attached hereto as Exhibit "H." After Trust defaulted on its obligations to Scott, McClain was fired from his employment with Greenberg Traurig.   Based upon discovery information provided by McClain, his employment with Greenberg Traurig was terminated on or about November 15, 2011, because of Treasures' involvement in the facts forming the basis of this lawsuit.   On December 21, 2011, after Scott filed this lawsuit, Carpanzano wrote a letter addressed to Messrs. Moore and Strum and others, wherein Carpanzano referred to the Greenberg Traurig attorneys as "our attorneys" and he and Treasures being Greenberg Traurig's clients in this transaction.   A true and correct copy of this letter is attached hereto as Exhibit "I."   In furtherance of Defendants' scheme, Greenberg Traurig attorney McClain sent a letter to JPMorgan Chase Bank on Greenberg Traurig letterhead and expressly on behalf of Greenberg Traurig, indicating that he and his law firm represented Trust, and that Trust would not be conducting business in the State of New York.   McClain noted that he sent

Carpanzano a copy of this letter.  A true and correct copy of this letter is attached hereto as Exhibit "J."

30.     Treasures used McClain as a reference for Scott and Mr. Moore by stating that McClain was their legal counsel, and gave Scott and Mr. Moore McClain's direct dial number at the Greenberg Traurig law firm.  Mr. Moore dialed that number and spoke to McClain, who then emailed Mr. Moore from his Greenberg Traurig email address.   Based on these representations from McClain and the indicia he provided that he was indeed a duly authorized attorney working for the Greenberg Traurig law firm, and working for firm clients Treasures and Hijawi, McClain's actions referenced in this Complaint were taken in the course and scope of his employment as an associate attorney for Greenberg Traurig.

31.     To institute the loan from Barclay to Cat, it was agreed that an escrow arrangement would need to be established whereby Cat was to cause funds to be placed in escrow.   Barclay, through Barrie and Montana, and Treasures, through Carpanzano, required the escrow be placed with Trust, a purported disinterested third party escrow agent.

32.     As the property owned by Cat was located in the Bahamas, approval of the Bahamian Government as to the loan from Barclay to Cat was required.   This would take several weeks. Scott was told that there were time constraints with the funding by Treasures to Barclay.   As a result of those time constraints, the escrow would need to be established prior to the time that the Bahamian Government would be able to approve the Barclay loan to Cat.   In view of these time constraints and to further the ability of Cat to eventually receive the loan funding, Scott individually was to establish the escrow with Trust with the understanding that simultaneously therewith, the lending arrangement between Cat and Barclay would be tendered to the Bahamian Government for approval, and when the loan was approved, the loan would be made by Barclay to Cat.   Scott in fact caused Cat to begin the process of obtaining Bahamian Governmental approval.

33.     On or about October 19, 2011, Scott, Treasures, Barclay and Trust executed a document entitled "Escrow Agreement," a true and correct copy of which is attached hereto and made a part hereof for all purposes and marked as Exhibit "A" ("Escrow Agreement").   Relevant parts of the Escrow Agreement include:

A.     Within two banking days of October 19, 2011, Scott was to place $2,000,000 ("Escrow Funds One") with Trust at a bank account Trust maintained at Chase bearing account number 3031589686 (the "ANTIMC Escrow Account") (Ex. "A," ¶ 3(a));

B.     Within ten banking days of October 19, 2011, Treasures was to provide to Scott a bank guarantee for the benefit of Scott in the amount of $20,000,000 (Ex. "A," ¶ 3(b)(c));

C.     Treasures and Trust represented that a Medium Term Note (Cusip No. 902892AA6, ISN No. US902892AA6) having a cash value of $100,000,000 had been pledged to the escrow account as security for the escrow funds to be placed by Scott (Ex. "A," ¶ 3(b));

D.     If and when Scott, in his sole and absolute discretion, approved the $20,000,000 Bank Guarantee, Scott was to remit an additional $18,000,000 in escrow to the ANTIMC Escrow Account ("Escrow Funds Two") (Ex. "A," ¶ 3(e)(1);

E.     In the event Scott approved the $20,000,000 Bank Guarantee and thereafter placed Escrow Funds Two in escrow with Trust, Treasures, within fifteen days, was to deliver SWIFT 103 cash funds in the amount of $500,000,000 to Barclay (Ex. "A," ¶ 7) of which $214,000,000 was to be loaned to Cat under a separate loan agreement; and

F.     Only after the SWIFT 103 cash funds in the amount of $500,000,000 had been received by Barclay did Trust have the right to transfer right, title, and control of the escrow funds to Treasures (Ex. "A," ¶ 7) so that until Treasures delivered the SWIFT 103 cash funds in the amount of $500,000,000 to Barclay, escrowed funds in the ANTIMC Escrow Account were not to be removed, title, control, or ownership was not to be transferred, and such funds were not to be

encumbered.   (Ex. "A," ¶ 4).

34.   The Escrow Agreement was amended twice as follows:

A.   On or about October 31, 2011, an Amendment to the Escrow Agreement was executed, a true and correct copy of which is attached hereto and made a part hereof for all purposes and marked as Exhibit "B."   The effect of the Amendment to the Escrow Agreement was to give Scott the right to allow the $20,000,000 Bank Guarantee to be issued in the name of Products by Big 12, Inc.; and

B.   On November 7, 2011, a Second Amendment to the Escrow Agreement was executed, a true and correct copy of which is attached hereto and made a part hereof for all purposes and marked as Exhibit "C."   The effect was to extend the deadline for Treasures to provide Scott the $20,000,000 Bank Guarantee through eleven (11) days after November 7, 2011.

35.   Pursuant to the Escrow Agreement, Scott established Escrow Funds One.   On October 21, 2011, Scott caused $2,000,000 to be wire-transferred to the ANTIMC Escrow Account.   In addition, on October 21, 2011, Scott caused $50,000 to be wire transferred to an account at Chase in the name of Barclay ("Escrow Fees"). The Escrow Fees were purported to represent the fee of Trust in connection with acting as escrow agent under the Escrow Agreement.

36.   On October 26, 2011, Trust issued a letter acknowledging that the $2,000,000 Escrow Funds One was deposited into ANTIMC Escrow Account and that such funds were being held by Trust in accordance with the Escrow Agreement.   A true and correct copy of the letter is attached hereto as Exhibit "D."

37.   Treasures failed to provide Scott with an acceptable $20,000,000 Bank Guarantee within the time deadline contained in the Escrow Agreement as amended by the Second Amendment to the Escrow Agreement.   On or about December 13, 2011, Bradford L. Moore, attorney for Scott, made inquiry of McCool about the status of Escrow Funds One. Defendant McCool provided

Moore with a "screenshot" which McCool represented was the account containing Escrow Funds One. This screenshot showed a balance of $2,000,234.16.   This document reflected a different account number than the ANTIMC Escrow Account.   A true and correct copy of the screenshot is attached hereto as Exhibit "E."

38.     On December 14, 2011, a date more than 11 banking days after November 7, 2011, and after the Escrow Agreement had expired by its own terms, Scott provided notice that he was terminating the Escrow Agreement, and requested that Escrow Funds One be returned in full to him.   On December 15, 2011, Scott made formal demand that the $2,000,000.00 Escrow Funds One be returned in full by close of banking on Friday, December 16, 2011.   Despite these demands, no return of the Escrow Funds One has been made by Trust to Scott.

39.     After initiating this litigation, Scott has learned that many representations made to him were false including but not limited to:

A.     Representations that Trust was an independent third party when in reality Trust is owned and controlled by Carpanzano;

B.     Representations that a Medium Term Note (Cusip No. 902892AA6, ISN No. US902892AA6) having a cash value of $100,000,000 had been pledged to the escrow account as security for the escrow funds placed by Scott under the Escrow Agreement when in reality no such Medium Term Note was ever pledged;

C.     Representations that Escrow Funds One remained in the ANTIMC Escrow Account in accordance with the Escrow Agreement when in reality virtually all of the $2,000,000 Escrow Fund was stolen as more fully detailed in paragraph 40;

D.     Representations that Carpanzano and Treasures were legitimate parties who were trustworthy and reliable, when in reality they have engaged in other transactions of this nature used to defraud other parties in a manner similar to how Scott has been defrauded; and

E.      A representation that the ANTIMC Escrow Account was an escrow account, when in reality it was nothing more than a business checking account of Trust.

40.      Moreover, after initiating this litigation, Scott has learned that the $2,000,000 Escrow Fund was stolen out of the ANTIMC Escrow Account.   Scott has learned that Belcastro, in violation of the Escrow Agreement, initiated a series of transfers and withdrawals out of the ANTIMC Escrow Account without Scott's knowledge, authorization, or approval.   These unauthorized transfers include:

A.      On October 21, 2011, $25,000 was transferred from the ANTIMC Escrow Account to Belcastro's personal checking account;

B.      On October 24, 2011, $500,000 was transferred from the ANTIMC Escrow Account to another account of Trust Management (the "ANTIMC Checking Account"). This $500,000 was transferred from the ANTIMC Checking Account that same day to an account in the name of Hijawi at Kuveyt Turk Katilim Bankasia in Istanbul, Turkey;

C.      On October 25, 2011, $400,000 was transferred from the ANTIMC Escrow Account to the ANTIMC Checking Account.   This $400,000 was transferred from the ANTIMC Checking Account to an account in the name of Hijawi at Kuveyt Turk Katilim Bankasia in Istanbul, Turkey;

D.      On October 27, 2011, $200,000 was transferred from the ANTIMC Escrow Account to an account in the name of Hijawi at Kuveyt Turk Katilim Bankasia in Istanbul, Turkey;

E.      On October 28, 2011, $100,000 was withdrawn from the ANTIMC Escrow Account by Belcastro;

F.      On November 1, 2011, $405,000 was transferred from the ANTIMC Escrow Account to an account in the name of Hijawi at Kuveyt Turk Katilim Bankasia in Istanbul, Turkey;

G.      On November 1, 2011, $5,000 was withdrawn from the ANTIMC Escrow Account

by Belcastro.

H.      On November 9, 2011, $46,608.94 was transferred from the ANTIMC Escrow Account to an account in the name of CA Organization, LLC d/b/a Celebrity Auto Group at the Bank of America, N.A. in New York, New York, which was used for the purchase of a 2008 Land Rover Range Rover, currently titled in the name of Carmela Ann Carpanzano;

I.      On November 9, 2011, $5,000 was withdrawn from the ANTIMC Escrow Account by Belcastro;

J.      On November 21, 2011, $5,000 was transferred from the ANTIMC Escrow Account to an account in the name of Candy R. Carpanzano Coppola at the PNC Bank, N.A. in Pittsburg, Pennsylvania;

K.      On November 28, 2011, $100,000 was transferred from the ANTIMC Escrow Account to an account in the name of Barrie at the Wells Fargo Bank, N.A. in San Francisco, California;

L.      On December 1, 2011, $182,500 was transferred from the ANTIMC Escrow Account to an account in the name of Haven View Escrow at the City National Bank, LA in Los Angeles, California.   These funds were subsequently transferred by Haven View Escrow to others including Garry L. Jameison, Martina Holdings, Inc., Sandy Smith, Centurion Holdings, Inc., Brennan, Manna & Diamond Attorneys, Robert Kowaliuk, Carl M. Mowdy, Jr., Michael Jamieson, Todd Pluchinske, and Stanley D. Parrish.

M.      On December 8, 2011, $8,900 was withdrawn from the ANTIMC Escrow Account by Belcastro; and

N.      On December 13, 2011, $10,000 was transferred from the ANTIMC Escrow Account to an account in the name of Terrastone Project Holdings with the Wells Fargo Bank, N.A. in San Francisco, California.

41.     Any balance of the funds in the ANTIMC Escrow Account and any other accounts of Trust at Chase were frozen pursuant to order of this Court , were interpleaded into the registry of this Court, and then paid to Scott pursuant to Court order.

42.     Scott has also learned that the $50,000 Escrow Fees wired to Barclay were not used as represented; that is to pay Trust. Rather, Montana withdrew $14,800 of these funds.   The remainder of the Escrow Fees on deposit with Chase was frozen pursuant to order of this Court, were interpleaded into the registry of this Court, and then paid to Scott pursuant to Court order.

**IV.**
**CAUSES OF ACTION**

43.     Scott's causes of action as against the Trust, Carpanzano, Carmela Carpanzano, Belcastro, Barclay, Barrie, Montana, Terrastone and McCool (collectively the "Defaulted Defendants") have been reduced to judgment.   *See* Default Judgments entered June 14, 2012 (Docket No. 140), August 29, 2012 (Docket No. 168), and January 17, 2013 (Docket No. 255). The causes of action against the Defaulting Defendants also remain as other remaining Defendants are alleged to have joint and several liability along with some or all of the Defaulted Defendants on some or all of those causes of action, and some or all of the remaining Defendants have vicarious liability with some or all of the Defaulted Defendants on some or all of those causes of action.

**A.     Breach of Contract**

44.     Defendant Trust breached the Escrow Agreement by:

        A.     Failing to secure the Medium Term Note (Cusip No. 902892AA6, ISN No. US902892AA6) having a cash value of $100,000,000 as a pledge to secure money placed by Scott in escrow;

        B.     Transferring or causing to be transferred money of Escrow Funds One before the SWIFT 103 cash funds in the amount of $500,000,000 had been received by Barclay; and

C.      Failing and refusing to return Escrow Funds One to Scott.

45.     These breaches have caused Scott damages in excess of the minimum jurisdictional requirements of this Court.

**B.      Breach of Fiduciary Duty**

46.     Under the Escrow Agreement, Trust accepted the position of escrow agent.   This created a fiduciary relationship whereby Trust owed fiduciary duties and obligations to Scott, to include the duty of loyalty, a duty to make full disclosure, and a duty to exercise a high degree of care.   All of these duties included the obligation to protect the escrow fund so that the same were handled only in strict accordance with the Escrow Agreement.

47.     Trust breached those fiduciary duties by:

A.      Failing to secure the Medium Term Note (Cusip No. 902892AA6, ISN No. US902892AA6) having a cash value of $100,000,000 as a pledge to secure money placed by Scott in escrow;

B.      Transferring or causing to be transferred money of Escrow Funds One before the SWIFT 103 cash funds in the amount of $500,000,000 had been received by Barclay;

C.      Advising Scott that Escrow Funds One was being held in accordance with the Escrow Agreement when in fact those funds had been transferred to third parties in direct violation of the Escrow Agreement; and

D.      Failing and refusing to return Escrow Funds One to Scott.

48.     These breaches of fiduciary duty have caused Scott damages in excess of the minimum jurisdictional requirements of this Court or alternatively have caused Trust to profit in such a way that requires disgorgement of any benefit or profit it received or was to receive under this transaction.

**C.** **Aiding and Abetting a Breach of Fiduciary Duty**

49.     Defendants Francis, McCool, Carpanzano, Carmela Carpanzano, Belcastro, Barclay, Barrie, Montana, Treasures, Terrastone, Hijawi and McClain aided and abetted Trust in the breach of its fiduciary duties to Scott or such Defendants Francis, McCool, Carpanzano, Carmela Carpanzano, Belcastro, Barclay, Barrie, Montana, Treasures, Terrastone, Hijawi and McClain otherwise knowingly participated with Trust in the breach of its fiduciary duties to Scott.

50.     Each of these Defendants Francis, McCool, Carpanzano, Carmela Carpanzano, Belcastro, Barclay, Barrie, Montana, Treasures, Terrastone, Hijawi and McClain assisted or participated with Trust in breaching the Trust's fiduciary duties to Scott and/or otherwise knowingly received money or other benefit from the Escrow Fund in direct violation of the Escrow Agreement and in direct violation of the fiduciary obligations which Trust owed to Scott.

51.     The conduct of Defendants Francis, McCool, Carpanzano, Carmela Carpanzano, Belcastro, Barclay, Barrie, Montana, Treasures, Terrastone, Hijawi, Trust and McClain in aiding or abetting a breach of fiduciary duty has caused Scott damages in excess of the minimum jurisdictional requirements of this Court or alternatively has caused the Defendants to profit in such a way that requires disgorgement of any benefit or profit it has or was to receive under this transaction.

**D.** **Texas Fraudulent Transfer Act**

52.     Defendants Trust, Francis, McCool, Carpanzano, Carmela Carpanzano, Belcastro, Barclay, Barrie, Montana, Treasures, Terrastone and Hijawi have violated the Texas Fraudulent Transfer Act.

53.     The trust and/or escrow account established through the Escrow Agreement was a mere sham.  Defendant Trust is not and was not a properly formed or existing trust company and did not and does not have the requisite legal authority to act as such nor to act as an escrow agent.

Moreover, the ANTIMC Escrow Account was not a true escrow account but rather was a business checking account.   To make matters worse, Carpanzano and Belcastro had absolute control over Defendant Trust, including Escrow Funds One placed into the ANTIMC Escrow Account.   This control allowed them to make the illegal and improper distributions of Escrow Funds One as more fully set forth in paragraph 40.   This conduct, to include the transfer as set forth in Paragraph 40, was fraudulent and was made with the intent to deprive Scott of his beneficial and outright ownership of Escrow Funds One.   As such Defendants Trust, Francis, McCool, Carpanzano, Carmela Carpanzano, Belcastro, Barclay, Barrie, Montana, Treasures, Terrastone and Hijawi, have violated Chapter 24 of the Texas Business and Commerce Code, and in particular, the Texas Fraudulent Transfer Act.

54.     The conduct of Defendants Trust, Francis, McCool, Carpanzano, Carmela Carpanzano, Belcastro, Barclay, Barrie, Montana, Treasures, Terrastone and Hijawi in violating the Texas Fraudulent Transfer Act have caused Scott damages in excess of the minimum jurisdictional requirements of this Court.

**E.     Fraud In the Inducement.**

55.     At the time of the execution of the Escrow Agreement, Defendants Trust, Barclay and Treasures had no intent of honoring its terms and conditions.

56     Moreover, Defendants Trust, Francis, McCool, Carpanzano, Barclay, Barrie, Montana and Treasures made material representations and statements as set forth above that they never intended to fulfill.   These representations and statements were false when they were made or were made recklessly without knowledge of the truth and made as positive assertions.   These representations and statements were made with the intent that Scott rely upon them.   Scott did indeed rely on these statements by entering into the Escrow Agreement and placing Escrow Funds One into the ANTIMC Escrow Account.

57.     The conduct of Defendants Trust, Francis, McCool, Carpanzano, Barclay, Barrie, Montana and Treasures in fraudulently inducing Scott into entering into the Escrow Agreement has caused Scott damages in excess of the minimum jurisdictional requirements of this Court.

**F.     Fraud After Placement Of Escrow Funds One.**

58.     After Scott placed Escrow Funds One into the ANTIMC Escrow Account, Defendants Trust, McCool and Carpanzano made false and fraudulent representations, as detailed above, that Escrow Funds One was being held and maintained in accordance with the Escrow Agreement. These representations and statements were false when they were made or were made recklessly without knowledge of the truth and made as positive assertions.   These representations and statements were made with the intent that Scott rely upon them.   Scott did indeed rely on these statements by continuing the Escrow Agreement in place and not demanding return of Escrow Funds One.

59.     The conduct of Defendants Trust, McCool and Carpanzano in making fraudulent statements and representations to Scott has caused Scott damages in excess of the minimum jurisdictional requirements of this Court.

**G.     Civil Conspiracy**

60.     Defendants Trust, McCool, Francis, Carpanzano, Belcastro, Hijawi, Treasures, McClain, Barrie, Montana, and Barclay agreed to and participated in the perpetration of the above-described breaches of fiduciary duty, violations of the Texas Fraudulent Transfer Act and common law fraud on Scott. These Defendants acted with the intent to harm Scott.

61.     To accomplish the object of their agreement, Defendants Trust, McCool, Francis, Carpanzano, Belcastro, Hijawi, Treasures, McClain, Barrie, Montana, and Barclay conspired to induce Scott to enter into the Escrow Agreement and wire transfer $2,000,000 to the ANTIMC Escrow Account by engaging in the conduct described above.

62.     The agreement to perpetrate the above-described breaches of fiduciary duty, violations of the Texas Fraudulent Transfer Act and common law fraud on Scott harmed Scott. Through reliance, Scott wire transferred $2,000,000 into the ANTIMC Escrow Account.   Thereafter, Belcastro, acting in furtherance of the conspiracy, initiated the series of illegal and improper transfers out of the ANTIMC Escrow Account as described in Paragraph 40 above.

63.     The conduct of Defendants Trust, McCool, Francis, Carpanzano, Belcastro, Hijawi, Treasures, McClain, Barrie, Montana, and Barclay in engaging in a civil conspiracy has caused Scott damages in excess of the minimum jurisdictional requirements of this Court.   Despite numerous demands on these Defendants, Escrow Funds One has not been returned to Scott.

**H.      Theft Liability Act**

64.     Scott further brings an action under the Texas Theft Liability Act, Texas Penal Code §31.03, for an unlawful appropriation of property.

65.     Scott was entitled to possession of the $2,000,000 Escrow Funds One which Scott wired into the ANTIMC Escrow Account.

66.     Defendants Trust, Francis, McCool, Carpanzano, Belcastro, Treasures, McClain, Hijawi, Barrie, and Barclay unlawfully appropriated Scott's property in violation of Texas Penal Code §31.03(3)(A). Specifically, Defendants Trust, Francis, McCool, Carpanzano, Treasures, McClain, Barrie, and Barclay induced Scott to wire $2,000,000 into the ANTIMC Escrow Account by entering into the Escrow Agreement. Instead of holding Escrow Funds One in accordance with the Escrow Agreement, Defendants Trust, Francis, McCool, Carpanzano, Treasures, Barrie, McClain, and Barclay initiated and/or benefitted from the series of transfers, described in Paragraph 40 above, in violation of the terms of the Escrow Agreement.

67.     Defendants Trust, Francis, McCool, and Carpanzano did not perform their promise to safeguard Scott's property.

68.     On information and belief, Defendants Carpanzano, Treasures, Trust, Francis, and McCool did not pledge the referenced Medium Term Note to the ANTIMC Escrow Account as security for all funds placed into that account.

69.     Defendants Carpanzano and Treasures failed to obtain and deliver to Trust a bank guarantee in the amount of $20,000,000 within ten banking days of Scott's transfer of the $2,000,000 into the ANTIMC Account.

70.     Defendants Trust, Francis, McCool and Carpanzano failed to return Scott's $2,000,000 as provided by and pursuant to the Escrow Agreement.

71.     The conduct of Defendants Trust, McCool, Francis, Carpanzano, Belcastro, Hijawi, Treasures, McClain, Barrie, Montana, and Barclay in violating the Theft Liability Act has caused Scott damages in excess of the minimum jurisdictional requirements of this Court.

**I.     Negligent Misrepresentation**

72.     McClain made the following representations to Scott, through his attorney, Bradford L. Moore, including but not limited to statements that:

A.     That Greenberg Traurig was the United States counsel for Treasures, and that McClain, as an attorney with Greenberg Traurig, had worked on numerous transactions for Treasures;

B.     That McClain knew Hijawi, and had personally met him;

C.     That McClain had represented Treasures and Hijawi for several years in a variety of complex domestic and international transactions;

D.     That Carpanzano was, in fact, the United States representative for Treasures;

E.     That Hijawi had used Defendant American National Trust & Investment Company, LLC as the escrow agent on numerous transactions, and that McClain had served as counsel, and there were no problems with those prior transactions;

F.      That he, McClain while acting as an employee of Greenberg Traurig, had provided legal work on at least 10 transactions in the past few years in which Carpanzano and Terrastone represented Treasures and Hijawi, and that Carpanzano and Terrastone had always represented Treasures and Hijawi in the United States;

G.      That McClain, as an employee of Greenberg Traurig, was currently providing legal work   to conclude a transaction that Treasures and Hijawi had financed in the United States that involved Carpanzano and Terrastone;

H.      That based on his experience working as counsel in the Greenberg Traurig law firm, that Treasures and Hijawi honored their contractual commitments, that they were a legitimate company, Carpanzano had the authority to transact business on their behalf, and once the contract was entered into, it would be fulfilled.

73.     McClain had a duty to use reasonable care in communicating this information and/or the information communicated was false and was known by McClain to be false.   As such, McClain's representations were misstatements of fact and indeed not true.   McClain was negligent in making these representations and statements.

74.     Scott justifiably relied on McClain's representations when Scott entered into the Escrow Agreement and caused $2,000,000 to be wired into the ANTIMC Account.

75.     McClain's misrepresentations proximately caused injury to Scott, which resulted in the damages described herein.

**J.      Deceptive Trade Practices**

76.     Scott, with regard to the escrow services that were to be provided by Defendant Trust under the Escrow Agreement, is a "consumer" as that term is defined within what is commonly known as the Deceptive Trade Practices - Consumer Protection Act being Section 17.41 *et. seq.* of Texas Business and Commerce Code (hereinafter "DTPA").

77.     Defendant Trust through its agents and representatives, McCool, Francis, Carpanzano and Belcasto, violated the DTPA by engaging in "false, misleading, or deceptive acts or practices" as that term is defined in Texas Business and Commerce Code Section 17.46(b) and by engaging in unconscionable acts and/or courses of conduct.

78.     The violations of the DTPA by Defendants Trust, McCool, Francis, Carpanzano and Belcasto were a producing cause of Scott's damages.

79.     Defendant Trust and its officers/managers Defendants Francis, McCool, Belcastro and Carpanzano are responsible for the DTPA violation of the Defendant Trust.

80.     The violations of the DTPA were committed knowingly by Defendants Francis, McCool, Belcastro and Carpanzano.

81.     Scott sues Defendants Trust, Francis, McCool, Belcastro and Carpanzano for all actual damages allowed under the DTPA together with multiple damages, attorney's fees and costs.

**K.     Vicarious Liability of Greenberg Traurig**

82.     At all relevant times, McClain was acting within the scope and course of his employment and agency with Greenberg Traurig, L.L.P. and/or Greenberg Traurig, P.A. Accordingly, Defendant Greenberg Traurig, L.L.P. and/or Defendant Greenberg Traurig, P.A. are vicariously liable for McClain's wrongful acts.   In this regard, at the time of McClain's conduct described herein:

        A.     McClain was an attorney licensed in the State of Georgia and was working as an associate for Greenberg Traurig, a law firm with offices throughout the United States and in many foreign countries.

        B.     McClain was an employee and/or agent of Greenberg Traurig;

        C.     Greenberg Traurig's clients included Treasures, Hijawi, American National Trust & Investment Company, LLC and Carpanzano;

D.      Greenberg Traurig had delegated to McClain the responsibility of handling the legal matters of Treasures, Hijawi, American National Trust & Investment Company, LLC and Carpanzano.   This is evidenced by correspondence to include a "To Whom it May Concern" letter on Greenberg Traurig letterhead written by McClain wherein McClain represented that Greenberg Traurig represented American National Trust & Investment Company, LLC and another letter on the letterhead of Treasures wherein it referred questions to its legal counsel, McClain;

E.      Bradford L. Moore reached McClain through a telephone number at Greenberg Traurig;

F.      Bradford L. Moore after such telephone conference sent email communications to and received email communications from McClain through an email address associated with Greenberg Traurig namely - - McClainA@gtlaw.com.   The email communications from McClain ended with the following:

> Alexander McClain
> Associate
> Greenberg Traurig, LLP | 3290 Northside Parkway, Ste 400 | Atlanta, GA 30327
> Tel 678-553-2390 | Fax 678-553-2391
> McClainA@gtlaw.com | www.gtlaw.com

## L.      Negligent Hiring, Supervising, Training and Retention by Greenberg Traurig

83.     Greenberg Traurig owed a duty to hire, supervise, train and retain competent employees. Greenberg Traurig breached these duties in hiring McClain, and supervising, training, and retaining McClain as an associate attorney for its law firm.   Greenberg Traurig's breach of these duties proximately caused Scott damages in excess of the jurisdictional limits of this Court. Accordingly, Scott asserts a cause of action against Greenberg Traurig for negligent hiring, supervising, training, and retention under Texas common law.

**M.     Disregard Corporate Form of Defendant Trust**

84.     The corporate form of Trust, if in fact it exists, should be disregarded and Defendants Francis, McCool, Carpanzano and Belcastro should be held personally liable for the actions of Defendant Trust.

85.     Defendants Francis, McCool, Carpanzano and Belcastro used the corporate form of Trust as a sham to perpetrate a fraud on Scott.   Specifically, Carpanzano insisted that Trust be the escrow company used in the transaction.   Carpanzano did not, however, disclose to Scott that Carpanzano and Belcastro, Carpanzano's wife, were the sole managing members of Defendant Trust, nor did he disclose that he had total control over the officers of Trust.   Scott relied on the representations made by Carpanzano that Trust was an independent third party escrow company. Had Scott known that Trust was controlled by Carpanzano and his wife, he would not have entered into the Escrow Agreement. Francis and McCool allowed the wrongdoing of Carpanzano and Belcastro. This fraud on Scott was perpetrated for the personal benefit of Carpanzano and Belcastro, who were able to, and did in fact, use the funds placed in the ANTIMC account for their own personal benefit.

**N.     Actual Damages**

86.     The conduct described herein has caused Scott to incur and Scott hereby seeks actual damages consisting of loss of the $2,000,000 Escrow Funds One, together with other incidental and consequential damages, and the disgorgement of any benefit or profit received.

**O.     Exemplary Damages and/or Multiple Damages**

87.     Texas law provides for the recovery of exemplary damages for the causes of action asserted herein.   Scott has obtained judgments for exemplary damages against most of the Defaulted Defendants.   *See* Default Judgments entered June 14, 2012 (Docket No. 140) and Default Judgment entered August 29, 2012 (Docket No. 168). Scott sues the remaining

Defendants, Francis, McCool, Treasures, and Hijawi, for exemplary damages in an amount sufficient to punish those remaining Defendants for their actions herein and to serve as a deterrent to others similarly situated.   The DTPA also allows for the recovery of multiple damages.   Scott has obtained judgments for multiple damages against some or all of the Defaulted Defendants. *See* Default Judgment entered June 14, 2012 (Docket No. 140) and Default Judgment entered August 29, 2012 (Docket No. 168).   Scott sues the remaining Defendants, McCool and Francis, for multiple damages under the DTPA.

## P.    Attorney's Fees

88.    For several of the causes of action pled herein, Scott is entitled to recover a reasonable attorney's fee.   Scott has obtained judgments for attorney fees against many of the Defaulted Defendants.   *See* Default Judgment entered June 14, 2012 (Docket No. 140) and Default Judgment entered August 29, 2012 (Docket No. 168). Scott hereby sues each remaining Defendant, where applicable, for a reasonable attorney's fee.

## Q.    Constructive Trust

89.    Defendants Trust, Francis, McCool, Carpanzano, Carmela Carpanzano, Belcastro, Barclay, Barrie, Montana, Treasures, Terrastone, McClain and Hijawi have received part of Escrow Funds One and/or the Escrow Fees in breach of fiduciary duties and fraudulent conduct described herein.   Scott has obtained judgments for a constructive trust against some or all of the Defaulted Defendants.   *See* Default Judgment entered June 14, 2012 (Docket No. 140) and Default Judgment entered August 29, 2012 (Docket No. 168).   Scott seeks the equitable remedy of imposition of one or more constructive trusts as to remaining Defendants Francis, McCool, Treasures, McClain and Hijawi, on the proceeds from Escrow Funds One and/or Escrow Fees, and Scott seeks to trace those proceeds and impose one or more constructive trusts against those proceeds.

## V.
## <u>REQUEST FOR PRELIMINARY INJUNCTION</u>

90.     Scott has previously received (a) preliminary injunctive relief as to numerous parties, *see* (Docket No. 63); and (b) permanent injunctive relief as to the Defaulted Defendants.  *See* Default Judgments entered June 14, 2012 (Docket No. 140), August 29, 2012 (Docket No. 168), and January 17, 2013 (Docket No. 255).   Scott continues to seek preliminary injunctive relief which prevents Francis, McCool, Treasures, McClain and Hijawi and any person or entity acting in concert with them, from taking the following actions, to-wit:

    a.  moving, transferring, withdrawing, authorizing any type of expenditure, or release of any funds wire-transferred by Lone Star State Bank of West Texas on behalf of the Plaintiff, Rick Scott, under outgoing wire transfer IMAD: 20111021GMQFMP01003536 on October 21, 2011, to Defendant JPMorgan Chase Bank, N.A. and into Account No. 3031589686 at JPMorgan Chase Bank, N.A.;

    b.  moving, transferring, withdrawing, authorizing any type of expenditure, or release of any funds which remain on deposit with JPMorgan Chase Bank, N.A., including the JPMorgan Accounts, as defined below, which may be traced back to any funds wire-transferred by Lone Star State Bank of West Texas on behalf of the Plaintiff, Rick Scott, under outgoing wire transfer IMAD: 20111021GMQFMP01003536 on October 21, 2011, to Defendant JPMorgan Chase Bank, N.A. and into Account No. 3031589686 at JPMorgan Chase Bank, N.A.;

    c.  making any expenditures of or transferring, disposing, moving, withdrawing, or releasing any funds or property which any of the Defendants may have received, acquired or purchased which came from or initially comprised a part of funds wire-transferred by Lone Star State Bank of West Texas on behalf of the Plaintiff, Rick Scott, under outgoing wire transfer IMAD: 20111021GMQFMP01003536 on October 21, 2011, to Defendant JPMorgan Chase Bank, N.A. and into Account No. 3031589686 at JPMorgan Chase Bank, N.A.; and

    d.  destroying or deleting any documents, evidence, or records, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiff, Rick Scott, including but not limited to all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information;

from the date of the entry of injunctive relief until further order of this Court.

As used herein the term "JPMorgan Accounts" means: (1) Account No. 981001860 in the

name of American National Trust and Investment Management Company, L.L.C.; (2) Account No. 3031589686 in the name of American National Trust and Investment Management Company, L.L.C.; (3) Account No. 989780762 in the name of American National Trust and Investment Management Company, L.L.C.; (4) Account No. 920109402 in the name of Marisa Belcastro; and (5) Account No. 3008680455 in the name of Barclay[s] Capital Holdings, LLC.

91.     Scott has alleged causes of action against Defendants Francis, McCool, Treasures, McClain and Hijawi, as indicated in this pleading and supported by the verification of this pleading by Scott and Mr. Moore.   Scott has shown a probable right of recovery and likelihood of success on the merits.   In the event that a preliminary injunction is not issued, Scott will suffer imminent, irreparable harm in that his funds comprising Escrow Funds One and/or the Escrow Fee will dissipate and may not ever be recovered, and pertinent evidence may be destroyed.   Scott has no adequate remedy at law which prohibits the Defendants from transferring, alienating, or spending monies which did or have comprised Escrow Funds One or destroying relevant evidence.

92.     As a direct and proximate result of the Defendants' wrongful actions as alleged in this pleading, Scott has suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of a preliminary injunction.   Scott has previously posted the necessary and reasonable bond to facilitate the injunctive relief requested.

93.     Scott is entitled to injunctive relief under statutory grounds pursuant to § 24.001 *et seq.* of the Texas Business and Commerce Code regarding fraudulent transfers and/or fraud. Specifically, any transfer under the facts as alleged herein by any of the Defendants Francis, McCool, Treasures, McClain and Hijawi would be fraudulent as to Scott and would be considered to have been made with the actual intent to harm or defraud Scott.   Scott qualifies as a creditor. Pursuant to § 24.008 of the Texas Business and Commerce Code, Scott is entitled to injunctive relief against the disposition of the assets comprising Escrow Funds One, the Escrow Fees or any disposition of monies which have been derived from Escrow Funds One or the Escrow Fees.

Scott is also entitled to a preliminary injunction under FED. R. CIV. P. 65.

94.     Further, Scott would show that under the allegations of this pleading and of the verification which is attached, Scott is entitled to equitable relief to prevent the furthering of a perpetrated fraud.

95.     The only adequate, effective and complete relief to Scott is to restrain Defendants Francis, McCool, Treasures, McClain and Hijawi, from further engaging in certain prescribed activities as set forth below.   In addition to the preliminary and permanent injunctions currently in effect, pursuant to FED. R. CIV. P. 65, and in order to preserve the status quo during the pendency of this action, Scott seeks a preliminary injunction until the time of final trial on the merits ordering and immediately restraining the following Defendants named herein, including any of their agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively the "Restrained Parties") as follows:

   1.     Defendant Phyllis Francis:

          a.     destroying or deleting any documents, evidence, or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiff, Rick Scott, including but not limited to, all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information.

   2.     Defendant James McCool a/k/a James F. McCool, III a/k/a James F. McCoole:

          a.     destroying or deleting any documents, evidence, or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiff, Rick Scott, including but not limited to, all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information.

   3.     Defendant Treasures FZE:
          a.     moving, transferring, withdrawing, authorizing any   type   of

expenditure, or release of funds, up to the amount of $1,505,000, which were wire transferred to Defendant Hijawi by Trust under the direction of Defendants Belcastro and Carpanzano, on deposit in Account Number 676209100101, Kuveyt Turk Katilim Bankasi A.S., Buyukdere CAD No. 129, Esentepe, Sisli, 34394 Istanbul, Istanbul Turkey 34394.

b.      destroying or deleting any documents, evidence, or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiff, Rick Scott, including but not limited to, all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information.

4.      Defendant Alexander Thomas McClain:

a.      destroying or deleting any documents, evidence, or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiff, Rick Scott, including but not limited to, all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information.

5.      Defendant Ahmed Hijawi:

a.      moving, transferring, withdrawing, authorizing any type of expenditure, or release of funds, up to the amount of $1,505,000, which were wire transferred to Defendant Hijawi by Trust under the direction of Defendants Belcastro and Carpanzano, on deposit in Account Number 676209100101, Kuveyt Turk Katilim Bankasi A.S., Buyukdere CAD No. 129, Esentepe, Sisli, 34394 Istanbul, Istanbul Turkey 34394.

b.      destroying or deleting any documents, evidence, or record, electronic or otherwise, that relates to any of the matters implicated by this lawsuit or pertaining to the Plaintiff, Rick Scott, including but not limited to, all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information.

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Scott prays that each of the Defendants be cited to appear and answer herein; that the Court enter a preliminary injunction; that the Court issue the same under the bond which Scott has previously posted; that Scott have and recover of

and from Defendants, jointly and severally, the damages as alleged herein, including exemplary damages, attorney's fees, prejudgment interest at the highest rate allowed by law; and post judgment interest; costs of court; and such other and further relief to which Scott may show himself justly entitled, whether at law or in equity.

Respectfully submitted,

By: /s/ *Jim Hund*

Jim Hund; SBN: 10277800
jhund@hkwwlaw.com
HUND, KRIER, WILKERSON & WRIGHT, P.C.
P.O. Box 54390
Lubbock TX 79453-4390
(806) 783-8700
(806) 783-8710 FAX

By: /s/ *Fernando M. Bustos*

Fernando M. Bustos; SBN:  24001819
Email: fbustos@bustoslawfirm.com
Aaron M. Pier; SBN: 24041694
Email: apier@bustoslawfirm.com
BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
(806) 780-3800 FAX

ATTORNEYS FOR PLAINTIFF RICK SCOTT

VERIFICATION

STATE OF TEXAS             §
                          §
COUNTY OF LUBBOCK          §

BEFORE ME the undersigned notary public, on this day personally appeared RICK SCOTT, who, after being duly sworn, stated under oath that he is the Plaintiff in this action; that he has read the above Fourth Amended Complaint; and that the statements contained paragraphs 21-42 therein are within his personal knowledge and are true and correct.

_____
RICK SCOTT

SUBSCRIBED AND SWORN TO before me by RICK SCOTT on this the 4th day of February, A.D. 2013.

JAN BUFKIN
Notary Public, State of Texas
My Commission Expires 7-21-2013

_____
Notary Public in and for Texas

<u>VERIFICATION</u>

STATE OF TEXAS        §
                                   §
COUNTY OF TERRY     §

BEFORE ME the undersigned notary public, on this day personally appeared BRADFORD L. MOORE, who, after being duly sworn, stated under oath that he has read the above Fourth Amended Complaint; and that the statements contained paragraphs 21-42 therein are within his personal knowledge and are true and correct.

_____
BRADFORD L. MOORE

    SUBSCRIBED AND SWORN TO before me by BRADFORD L. MOORE on this the 4TH day of February, A.D. 2013.

NONA PERNELL
Notary Public,
State of Texas
Comm. Exp. 04-30-13

_____
Notary Public in and for Texas

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all counsel of record on the date of filing via ECF, and upon the following pro se Defendants in the manner indicated below on the 4th day of February, 2013:

*Fernando M. Bustos*
FERNANDO M. BUSTOS

Barclay Capital Holdings, LLC
c/o Corporate Representatives:
J. Scott Montana
21245 Lopez Street
Woodland Hills, CA 91364
***Via Email:*** *jsmontana@gmail.com*
***Return Receipt Requested***
Leonard G. Barrie
***Via Email:*** *lbarrie9@gmail.com*
***Return Receipt Requested***

Robert L. Sirianni, Jr.
BROWNSTONE, P.A.
400 N. New York Ave., Suite 215
Winter park, FL 32789
Counsel for Salvatore Carpanzano aka John Salvatore Carpanzano
***Via ECF***

Phyllis Francis
***Via Email:*** *jmccool@antimtrust.com*

Lawrence M. Doss
MULLIN HOARD & BROWN, LLP
P.O. Box 2585
Lubbock, TX 79408-2585
Counsel for Defendants McClain, Greenburg Traurig, L.L.P. and Greenberg Traurig, P.A.
***Via ECF***

David Rosen
The Rosen Law Firm, PLLC
Kierland Business Center
15849 N. 71st Street, Suite 100
Scottsdale, AZ 85254
Counsel for Defendants Leonard G. Barrie and J. Scott Montana
***Via Certified Mail, Return Receipt Requested***